**In re Anthony J. CORIZZI, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 01–BG–314.**

District of Columbia Court of Appeals.

Argued Feb. 7, 2002.
Decided July 25, 2002.

Julia L. Porter, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Jon E. Shields for respondent.

Before TERRY and STEADMAN, Associate Judges, and FERREN, Senior Judge.

STEADMAN, Associate Judge:

Respondent Anthony Corizzi excepts from the unanimous recommendation of the Board on Professional Responsibility("the Board") that he be disbarred from the practice of law in the District of Columbia.[1] Although he was found to have committed a telling number of ethical violations, most particularly he counseled two clients, in separate cases, to commit perjury in their depositions, which they did to the virtual destruction of their causes. We accept the Board's recommendation and disbar respondent.

In reviewing a disciplinary recommendation of the Board, this court "shall ac-cept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C. Bar R. XI, § 9(g)(1). Thus, while "we enforce a general sense of equality in the sanctions handed out ... [the rule] otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable." *In re Temple,* 629 A.2d 1203, 1207 (D.C.1993) (citation omitted). Keeping these guidelines in mind, we turn to the matter at hand.

## I. Ethical Violations

The full history of respondent's derelictions and the disciplinary proceedings that led to the disbarment recommendation would be a lengthy exposition adding nothing of significance to the disposition of this matter. As the Board particularly noted with respect to the subornation of perjury proceedings, "[t]he Hearing Committee's Findings of Fact are extensive and well-documented with ample citations to the record." The Board's exposition of the findings of fact in the two separate bar dockets before us total some 123 separate paragraphs. We present here a brief summary of those findings and conclusions. Although respondent challenges the sufficiency of the evidence to support the found ethical violations, we think they are well supported by the extensive record.

### A.

Bar Docket No. 219–98 was a consolidated case arising out of the respondent's

---

1. While supporting the recommendation for disbarment, Bar Counsel filed exceptions challenging the Board's failure to find additional ethical violations by respondent. We do not address these exceptions because dis-barment is warranted, as Bar Counsel agreed, based simply on the violations that were found by the Board. *See In re Gil,* 656 A.2d 303, 304 (D.C.1995).

representation of Ms. Pamela Meek and Ms. Bonnie Sheeder in their unrelated personal injury suits. The Board determined that the respondent violated numerous rules of professional conduct when he (i) suborned the perjury of his clients by instructing them to lie at their depositions about the referral relationship that existed between himself and Dr. Edward Carlton, a chiropractor, to whom respondent had a regular practice of referring personal injury clients and who in turn referred patients to respondent for legal representation; (ii) failed to advise Ms. Meek of a settlement offer; and (iii) made false statements to Bar Counsel denying that he counseled his clients to lie at their depositions.

The testimony credited by the Hearing Committee and the Board shows that the respondent counseled and instructed both Ms. Meek and Ms. Sheeder to lie in their depositions in an apparent effort to conceal the fact that the respondent and Dr. Carlton were referring clients to one another. As a result of these instructions both clients testified falsely at their depositions, saying that they had located Dr. Carlton, in Ms. Meek's case, and the respondent, in Ms. Sheeder's case, through the yellow pages. These actions by respondent manifestly violated Rules 3.3(a) (knowingly counseling or assisting clients to engage in criminal or fraudulent conduct); 3.4(b) (counseling clients to testify falsely); and 8.4(c) (engaging in conduct involving fraud, dishonesty or deceit and/or misrepresentation).[2] *See, e.g., In re Thompson,* 538 A.2d 247 (D.C.1987) (lawyer violated DR 1–102(A)(4), the predecessor to D.C. Rule 8.4(c), by knowingly assisting his client in

the presentation of false statements to the Immigration and Naturalization Service); *In re Sandground,* 542 A.2d 1242 (D.C. 1988) (lawyer violated DR 1–102(A)(4) and DR 7–102(A)(7), the predecessors to D.C. Rules 3.3(a) and 8.4(c), by assisting his client in concealing information about the client's funds with respect to discovery requests).

Instructing his clients to testify falsely was also a violation of D.C. Rule 1.3(b)(2) (intentional prejudice or damage to client) because the instruction virtually destroyed their prospects for recovery in their personal injury claims[3] and it exposed them to criminal prosecution for perjury. *See In re Robertson,* 612 A.2d 1236, 1250–51 (D.C.1992). Finally, the record clearly indicates that the respondent failed to advise Ms. Meek of two $10,000 settlement offers until after he had rejected them which is on its face a violation of D.C. Rule 1.4(c) (failure to inform client of settlement offer promptly). *See In re Asher,* 772 A.2d 1161, 1168–69 (D.C.2001).

### B.

Bar Docket No. 223–97 involved a third instance involving respondent's misconduct in the course of representing a client. Ms. Dorotha Wallace sought respondent's representation in connection with a divorce, custody and domestic abuse matter. After several months of representation, Ms. Wallace filed an ethical complaint with Bar Counsel alleging sexual misconduct during the course of their attorney-client relationship. Respondent denied the allegations and, arguably in retaliation, advised Bar Counsel that Ms. Wallace had committed

---

**2.** Respondent's actions took place in Virginia, although he had a second office in the District. The Board found that respondent had also violated the Virginia counterparts of the District ethical provisions.

**3.** After discovery of the perjury, Ms. Meek settled her case for $3,000, which after payment of medical expenses netted her $500. In Ms. Sheeder's case, the court entered a voluntary nonsuit.

perjury at a January 21, 1997 hearing before the Virginia Domestic Relations Court.[4] He also reported the alleged perjury to the Virginia court. In an apparent effort to distance himself from Ms. Wallace's alleged perjury, the respondent claimed he did not represent Ms. Wallace at the January hearing.

 The Board concluded that the respondent violated D.C. Rules 3.3(a); 4.1(a); and 8.4(c) by making false statements to Mr. Wallace's counsel and to the court regarding the date of commencement of his representation of Ms. Wallace.[5] Respondent's claim that the Board's conclusion is not supported by substantial evidence is based on the argument that because Ms. Wallace did not tender a retainer fee until after the January hearing and because the respondent did not file any papers with the court establishing that he was Ms. Wallace's attorney, a lawyer-client relationship did not exist on January 21, 1997. The evidence, however, shows that the respondent was in fact retained as Ms. Wallace's lawyer on this date. Ms. Wallace's testimony, credited by the Hearing Committee and the Board, indicates that the respondent advised her of the steps necessary to obtain a protective order and appeared with her in court on January 21, 1997, during the

*ex parte* hearing. *See In re Sofaer*, 728 A.2d 625, 628 (D.C.), *cert. denied*, 529 U.S. 1053, 120 S.Ct. 1555, 146 L.Ed.2d 460 (2000) (providing legal advice is clearly a feature of an attorney-client relationship). "Neither a written agreement nor the payment of fees is necessary to create an attorney-client relationship." *In re Ryan*, 670 A.2d 375, 379–380 (D.C.1996). In total, the evidence supports the conclusion that in an effort to distance himself from Ms. Wallace's alleged perjury the respondent misrepresented to the court and opposing counsel that he did not represent Ms. Wallace on January 21, 1997, when she obtained an *ex parte* order.[6]

## II. Sanction

We now turn to the question of sanction. The Board unanimously concluded, as had the Hearing Committee in the Meek/Sheeder matter, that "disbarment is the only appropriate sanction." Respondent argues that the sanction of disbarment is inappropriate because his misconduct was not engaged in for personal gain and because disbarment is inconsistent with dispositions for comparable conduct.

 In determining whether to accept the Board's recommendation, this court considers the nature of the violation, prior

---

**4.** The Hearing Committee concluded that the alleged sexual misconduct had not been established, and Bar Counsel took no exception to this conclusion. With respect to whether or not Ms. Wallace in fact committed perjury, the Board concluded that the findings by the Hearing Committee were insufficient to resolve the issue definitively.

**5.** Specifically, the respondent violated Rule 3.3(a)(1) (false statement to a tribunal) because he knowingly made false statements of material fact to the Virginia court concerning the date of the commencement of his lawyer-client relationship with Ms. Wallace. Respondent violated Rule 4.1(a)(false statement to a third person) because he knowingly made

similar false statements to opposing counsel. Finally, the respondent violated Rule 8.4(c) (misstatement of material fact) because he engaged in conduct involving dishonesty by such misrepresentations.

**6.** This misrepresentation was of a material fact in the circumstances here. *See In re Shearin*, 764 A.2d 774, 776 n. 1 (D.C.2000) (finding that respondent violated Delaware Lawyer's Rule of Professional Conduct 3.3(a) (knowingly making a false statement of material fact or law to a tribunal) by representing to a Delaware court at various times that she did, and did not, represent the Conference and its Bishop).

disciplinary sanctions, mitigating and aggravating circumstances, protection of the public, courts and the legal profession, and, to the extent it can be determined, the moral fitness of the attorney. *See In re Hutchinson,* 534 A.2d 919, 924 (D.C. 1987) (en banc) (citation omitted); *In re McLain,* 671 A.2d 951, 954 (D.C.1996) (citation omitted).

In the current case, the recommendation of disbarment is particularly influenced by the violations established in the Meek/Sheeder incident, which establish that the respondent instructed two of his clients to lie in their depositions; that is, he suborned perjury. Dishonesty is at the heart of the respondent's violations, and honesty continues to be an "indispensable component of our judicial system." *In re Mason,* 736 A.2d 1019, 1024 (D.C. 1999). The risk to the public presented by respondent's conduct is all the more serious because it occurred in connection with his practice of law. *See In re Miller,* 553 A.2d 201, 205 (D.C.1989); *In re Kennedy,* 542 A.2d 1225, 1230–31 (D.C.1998).[7] In *In re Meisnere,* 471 A.2d 269, 270 (D.C.1984) (per curiam), this court concluded that perjury and perjury-related offenses involve moral turpitude per se and therefore convictions of such crimes mandate disbarment under D.C.Code § 11–2503(a) (2001).[8] *Accord, In re Gormley,* 793 A.2d 469 (D.C.2002) (per curiam). A lawyer need not actually be convicted of a crime of moral turpitude in order to be disbarred on the basis of the underlying conduct. *See In re Slattery,* 767 A.2d 203, 207 (D.C.

2001). Here, the respondent instructed his clients to lie under oath at their depositions. If convicted for this instruction, the conviction would surely be for a perjury-related offense involving moral turpitude, such as subornation of perjury pursuant to D.C.Code § 22–2403 (2001) or Va.Code § 18.2–436. *See In re Gormley, supra,* 793 A.2d at 470 (where object of conspiracy is a crime involving moral turpitude, conspiracy to commit the underlying offense is likewise).

Respondent argues that his own misconduct is similar to the misconduct found in *In re Reback and Parsons,* 513 A.2d 226 (D.C.1986) (en banc), where the attorneys' neglect resulted in the unintentional dismissal of their client's divorce complaint. Rather than inform the client of this error, they re-filed by signing the client's name and having it notarized. The attorneys were ultimately suspended for six months. Respondent also argues that his own misconduct is similar to the misconduct found in *In re Hutchinson, supra,* 534 A.2d 919, where the attorney was suspended from the practice of law for one year after testifying falsely before the Securities and Exchange Commission.

We think respondent's conduct was far more egregious than either of these instances, which themselves were reprehensible.[9] While engaged in the practice of law, he blatantly solicited outright perjury by two of his clients on separate occasions to conceal his reciprocal relationship with the chiropractor. The predictable consequences of his action were the virtual de-

---

7. This court has upheld the sanction of disbarment even in cases where the disbarred attorney was not acting in an attorney-client relationship. *See, e.g., In re Gil, supra* n. 1, 656 A.2d 303.

8. D.C.Code 11–2503(a) (2001) requires that a member of the bar convicted of an offense involving moral turpitude be disbarred.

9. Nor, for the reasons indicated, does respondent's conduct bear comparison in the above-cited cases of *In re Thompson* and *In re Sandground.* Indeed, in the latter case, the respondent affirmatively advised his client to tell the truth at the deposition if asked. 542 A.2d at 1245.

struction of his clients' cases and their exposure to possible criminal prosecution, clients to whom he owed the highest duty of fidelity. What his precise motives were or whether he benefitted financially is not determinative. *Cf. In re Carlson,* 802 A.2d 341, 347 (D.C.2002) (misappropriation applies "whether or not [the attorney] derives any personal gain or benefit therefrom") (citations omitted); *In re Addams,* 579 A.2d 190, 193 (D.C.1990) (en banc) (attorney disbarred for intentional misappropriation despite absence of "corrupt intent"). Furthermore, these ethical violations do not each stand alone as a single incident. Indeed, they come not only with each other but also in conjunction with a series of additional serious violations. *Cf., e.g., In re Goffe,* 641 A.2d 458 (D.C.1994) (per curiam). Respondent has failed to admit any wrongdoing and has shown no remorse. Finally, there are no mitigating factors to consider. In short, respondent's overall conduct reflects a continuing and pervasive indifference to the obligations of honesty in the judicial system and to the duty of loyalty to the interests of his clients. We are quite satisfied on this record that we can respect the Board's general sense of equity in accepting its recommendation. It is accordingly

ORDERED that respondent Anthony J. Corizzi is disbarred from the practice of law in the District of Columbia. Respondent's attention is drawn to the requirements of D.C. Bar R. XI, § 14, and their effect on eligibility for possible reinstatement. See D.C. Bar R. XI, § 16(c).