*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-BG-1491

IN RE GILBERT BABER, RESPONDENT.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 428285)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-518-09)

(Submitted November 13, 2014                    Decided January 15, 2015)

*Wallace E. Shipp, Jr.*, Bar Counsel, *Jennifer P. Lyman*, Senior Assistant Bar Counsel, and *Jelani C. Lowery*, Senior Staff Attorney, were on the brief for the Office of Bar Counsel.

Before THOMPSON and MCLEESE, *Associate Judges*, and NEWMAN, *Senior Judge*.

PER CURIAM: The Board on Professional Responsibility has concluded that respondent Gilbert Baber violated numerous Rules of Professional Conduct during his representation of a client in a probate matter. The Board recommends that Mr. Baber be suspended from the practice of law for a period of three years and be required to prove fitness and to pay restitution as conditions of reinstatement. The

Office of Bar Counsel contends that Mr. Baber's conduct constituted flagrant dishonesty requiring disbarment. We conclude that Mr. Baber should be disbarred.

**I.**

The Board's report and recommendation rests on the following findings, which are undisputed in this court.

In April 2007, Darlene Gripper retained Mr. Baber to represent her in the probate of her mother's estate. Ms. Gripper and Mr. Baber signed a retainer letter providing that Mr. Baber was to charge Ms. Gripper $125 per hour, plus expenses. On June 14, 2007, Mr. Baber filed a petition for unsupervised probate, naming Ms. Gripper as the personal representative of her mother's estate. On June 19, 2007, the probate court appointed Ms. Gripper as the personal representative of her mother's estate.

As personal representative, Ms. Gripper was required to give notice of the opening of the estate to her two brothers, as "interested persons," within twenty days of her appointment, i.e., by July 9, 2007. Ms. Gripper's brothers did not receive notice until July 30, 2007, approximately three weeks after the required

date. Ms. Gripper was also required to publish notice of the opening of the estate within three months of her appointment and to verify to the court that she had done so. On September 10, 2007, the probate court sent a notice to Mr. Baber and Ms. Gripper, reminding them that they needed to file a verification with the court by September 24, 2007. Despite receiving the reminder, Mr. Baber did not send the verification form to Ms. Gripper to sign until September 27, 2007. Ms. Gripper sent the signed forms back to Mr. Baber the next day, but Mr. Baber did not file them until October 2, 2007.

Additionally, as personal representative, Ms. Gripper was required to complete an inventory of the estate within three months of her June 19, 2007, appointment. Mr. Baber did not provide Ms. Gripper with the necessary forms until October 9, 2007, well after the deadline. He also erroneously advised Ms. Gripper on how to properly value the estate and refused to correct the valuation despite Ms. Gripper's request that he do so.

The probate court set a hearing for October 30, 2007, to determine whether it should remove Ms. Gripper as personal representative. At the hearing, Mr. Baber told the court that Ms. Gripper had missed deadlines because the estate had limited funds, which was not true. Mr. Baber billed Ms. Gripper for the time he spent

preparing for and participating in the hearing, even though his neglect had led the probate court to schedule the hearing in the first place.

In July 2008, Mr. Baber learned that the estate's share of proceeds from the anticipated sale of property in Alabama was estimated at around $196,000. Mr. Baber subsequently wrote a letter to Ms. Gripper memorializing an oral modification of the terms of the retainer agreement, to provide that Mr. Baber would receive five percent of the estate's interest in the property if the property was sold. His explanation for the modification was that it was "too burdensome" for him to document the time he spent on work relating to the property. Despite this explanation, the modified agreement stated that, if the property was not sold, Mr. Baber would be paid hourly for his time. Although the property was not sold, Mr. Baber nevertheless demanded one-third of five percent of the estimated value of the property. Ms. Gripper refused to pay and requested an accounting of Mr. Baber's time on the matter so that she could pay him the agreed-upon hourly fees.

Rather than comply with Ms. Gripper's request, Mr. Baber sent a notice to Ms. Gripper informing her that he was withdrawing from the representation. In the notice, Mr. Baber stated that he was withdrawing because, among other things, (1) Ms. Gripper had failed to pay her monthly bills in a timely manner; (2) Ms.

Gripper had failed to cooperate with Mr. Baber and to furnish information and documentation in a timely manner; and (3) Ms. Gripper had refused to comply with Mr. Baber's demand for one-third of the five-percent fee for the unsold property. Mr. Baber also accused Ms. Gripper of attempting to "perpetrate a fraud on the Court," and he demanded that she pay him $10,360.48, representing one-third of the five-percent fee, the balance owed for work relating to the unsold property, and the balance owed for work in April. He threatened to sue Ms. Gripper for the total amount if she failed to pay $3,265.99 by April 15, 2009. In response, Ms. Gripper stated that she disagreed with Mr. Baber's assertions and requested a full accounting of services and all documents that Mr. Baber had received or sent to third parties in connection with the representation.

Mr. Baber subsequently filed a motion in the probate court, seeking to withdraw from the representation. The motion contained false accusations and misrepresentations similar to those he made in his earlier letter to Ms. Gripper. When Ms. Gripper renewed her request for her case file, Mr. Baber refused to turn it over or account for his time, stating that he did not document every hour he spent working on the unsold property. Mr. Baber thereafter sent Ms. Gripper a letter estimating that he spent thirty-three hours working on the property, but Ms. Gripper refused to pay Mr. Baber because he had only provided an estimate. The

probate court ultimately granted Mr. Baber's motion to withdraw, without endorsing any of the allegations in the motion.

Mr. Baber's actions caused prejudice to Ms. Gripper. One of Ms. Gripper's brothers charged her with malfeasance in the administration of the estate, expressly relying on the allegations in Mr. Baber's motion to withdraw. Furthermore, because Mr. Baber withdrew, Ms. Gripper had to restart the probate process with a new attorney and post a $61,000 probate bond.

Mr. Baber also sued Ms. Gripper in Superior Court, accusing her of fraudulently using his legal services to "conceal and misrepresent [her mother's] assets" and to deny her brothers their lawful share of the estate's assets. After Ms. Gripper filed a *pro se* answer to the lawsuit, Mr. Baber filed a motion to dismiss the answer and a motion for judgment against Ms. Gripper, claiming that Ms. Gripper had fraudulently represented herself as a lawyer. In fact, Ms. Gripper had not represented herself as a lawyer. The court denied Mr. Baber's motions. Ultimately, Mr. Baber filed a consent motion to dismiss his lawsuit with prejudice, stating that "[t]he filing of this lawsuit against [Ms. Gripper] should not be construed as indicating anything negative about her character or honesty." The trial court dismissed the lawsuit with prejudice. The court subsequently amended

the dismissal order, to add language stating that the filing of the lawsuit "should not be construed as indicating anything negative about [Ms. Gripper's] character or honesty."

Ms. Gripper filed a disciplinary complaint against Mr. Baber. In response, Mr. Baber stated that the complaint he had filed in Superior Court accurately stated his defense to Ms. Gripper's allegations.

After an evidentiary hearing, a Hearing Committee of the Board on Professional Responsibility concluded that Mr. Baber violated numerous Rules of Professional Conduct. Specifically, the Hearing Committee found that Mr. Baber had exhibited a lack of knowledge about probate law and practice and failed to competently represent Ms. Gripper, in violation of Rules 1.1 (a) and (b); failed to act zealously and diligently and misused information he had obtained in representing Ms. Gripper to formulate baseless attacks against her, in violation of Rules 1.3 (a) and (c); failed to keep Ms. Gripper reasonably informed, in violation of Rules 1.4 (a) and (b); charged unreasonable fees, in violation of Rule 1.5 (a); betrayed client confidences to Ms. Gripper's detriment, in violation of Rules 1.6 (a)(1), (2), and (3); failed to timely return Ms. Gripper's file after the representation ended, in violation of Rule 1.16 (d); knowingly made false

statements to the court, in violation of Rules 3.3 (a) and 8.4 (c); and engaged in conduct that seriously interfered with the administration of justice, in violation of Rule 8.4 (d). The Hearing Committee recommended that Mr. Baber be disbarred, because his conduct amounted to "flagrant dishonesty." The Hearing Committee also recommended that Mr. Baber be required to pay restitution of $8,093.75 plus interest.

The Board agreed with the Hearing Committee's findings of fact and conclusions that Mr. Baber committed the foregoing violations of the Rules of Professional Conduct. The Board concluded, however, that Mr. Baber's conduct did not constitute flagrant dishonesty. In reaching that conclusion, the Board considered that Mr. Baber had no prior disciplinary record, that his misrepresentations were limited to Ms. Gripper's case, and that he withdrew his civil complaint and did not resist Ms. Gripper's request that the Superior Court clarify its dismissal order to protect her reputation. The Board recommended that Mr. Baber be suspended from the practice of law in the District of Columbia for three years and that Mr. Baber be required to demonstrate his fitness to practice and to make restitution in the amount of $8,093.75, plus interest, before being permitted to resume the practice of law.

## II.

Mr. Baber has not challenged before this court the report and recommendation of the Board. Moreover, the record provides ample support for the Board's findings of fact and conclusions that Mr. Baber violated numerous Rules of Professional Conduct. We therefore accept those findings and conclusions. *See generally, e.g.*, *In re Vohra*, 68 A.3d 766, 769 (D.C. 2013) (accepting Board's uncontested findings of facts and conclusions that attorney violated Rules of Professional Conduct).

Bar Counsel does challenge the Board's recommended sanction, arguing that Mr. Baber instead should be disbarred. On the question of what sanction to impose, "[o]ur Rules provide that this Court 'shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *Vohra*, 68 A.3d at 771 (quoting D.C. Bar R. XI, § 9 (h)(1)). Thus, "[a] sanction recommendation from the Board comes to us with a strong presumption in favor of its imposition." *Id.* (internal quotation marks omitted). In general, "if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation

marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *In re Kanu*, 5 A.3d 1, 14 (D.C. 2010) (internal quotation marks omitted). Where this court takes a significantly different view of the seriousness of an attorney's conduct, the court thus has not hesitated to reach its own conclusion as to the appropriate sanction. *See, e.g.*, *In re Goffe*, 641 A.2d 458, 464 (D.C. 1994) (per curiam).[1]

In determining what sanction to impose upon an attorney for violations of the Rules of Professional Conduct, we consider a number of factors, including, "(1) the nature and seriousness of the misconduct; (2) prior discipline; (3) prejudice to the client; (4) the [attorney's] attitude; (5) circumstances in mitigation and aggravation; and (6) the mandate to achieve consistency." *Vohra*, 68 A.3d at 771. We also consider "the moral fitness of the attorney" and "the need to protect the public, the courts, and the legal profession . . . ." *In re Howes*, 52 A.3d 1, 15 (D.C. 2012) (internal quotation marks omitted). "The purpose of imposing discipline is to serve the public and professional interests identified and to deter future and

---

[1] Bar Counsel appears to interpret our cases as requiring that any attorney who engages in "flagrant dishonesty" must be disbarred as a matter of law. We need not decide whether that interpretation is correct, because we conclude that disbarment is the appropriate sanction in the particular circumstances of this case.

similar conduct, rather than to punish the attorney." *Kanu*, 5 A.3d at 16 (internal quotation marks omitted).

Boiled down to essentials, the Board's findings are that Mr. Baber failed to competently represent his client; lied to the court; pressured his client to pay an excessive fee that she had not agreed to pay; improperly used confidential information from his client to make knowingly false accusations of fraud against his client in several pleadings; reiterated those false accusations during the disciplinary process; and failed to show remorse during the disciplinary process. Assessing that conduct in light of the pertinent factors, we are convinced that Mr. Baber should be disbarred.

First, Mr. Baber's dishonesty was very serious. We have repeatedly stated that "honesty is basic to the practice of law, and that lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times." *In re Guberman*, 978 A.2d 200, 209 n.10 (D.C. 2009) (internal quotation marks omitted). *See Howes*, 52 A.3d at 16 ("[T]here is nothing more antithetical to the practice of law than dishonesty . . . .") (internal quotation marks omitted). Although an isolated incident of dishonesty will not ordinarily by itself warrant disbarment, *see, e.g.*, *In re Silva*, 29 A.3d 924, 945-46 (D.C. 2011), this case involves a series of knowingly

false statements, not only to Ms. Gripper but also orally to the court, in written pleadings filed in court, and in a written submission to Bar Counsel. Mr. Baber's dishonesty was also protracted, starting in October 2007 and continuing through to his December 2009 submission to Bar Counsel. The repeated and protracted nature of Mr. Baber's dishonesty weighs significantly in favor of disbarment. *See, e.g.*, *In re Omwenga*, 49 A.3d 1235, 1238 (D.C. 2012) (per curiam) ("Particularly where dishonesty is aggravated and prolonged, disbarment is the appropriate sanction.") (internal quotation marks omitted).

Second, Mr. Baber's repeated dishonesty is particularly disturbing because it came at the expense of his client's interests and was in large part driven by a desire for personal gain. When he lied to the court about why Ms. Gripper had not met certain deadlines, Mr. Baber "basically threw his client under the bus." Mr. Baber also made false statements to Ms. Gripper in an effort to obtain an unreasonable fee that Ms. Gripper had never agreed to pay. Mr. Baber subsequently betrayed client confidences and made knowingly false accusations that Ms. Gripper had engaged in fraudulent conduct. Moreover, as we have noted, Mr. Baber's dishonest conduct caused prejudice to Ms. Gripper. These considerations weigh significantly in favor of disbarment. *See, e.g.*, *Omwenga*, 49 A.3d at 1239 (describing attorney's conduct as "egregious" because, among other things, it

reflected "a blatant disregard for his clients"); *Silva*, 29 A.3d at 946 (cases in which attorneys have been disbarred have involved, among other things, "actions that abused the attorney-client relationship"); *Kanu*, 5 A.3d at 15 (attorney's lies to clients "compounded her misconduct," and court "must view the injury to [attorney's] clients as an aggravating factor"); *Goffe*, 641 A.2d at 465 (treating as aggravating factor that attorney acted "in order to obtain an economic benefit").

Third, the record supports the Board's determination that Mr. Baber showed no remorse during the disciplinary process, but instead repeated his false accusations against Ms. Gripper and continued to falsely blame Ms. Gripper. Such circumstances also weigh significantly in favor of disbarment. *See, e.g.*, *Howes*, 52 A.3d at 20 (attorney's "failure to accept responsibility [is] an aggravating factor in our determination of the appropriate sanction").

Fourth, we do not see countervailing considerations weighing significantly against disbarment. It is true that Mr. Baber has no prior disciplinary record. The aggravated nature of Mr. Baber's conduct, however, in our view "overwhelm[s] any absence of prior or subsequent disciplinary actions." *Howes*, 52 A.2d at 20. It is also true that Mr. Baber's dishonesty was limited to a single matter and did not "permeate" Mr. Baber's practice of law. *See, e.g.*, *Vohra*, 68 A.3d at 787 (in

accepting Board's recommendation that attorney be suspended for three years, court notes that attorney's conduct was not as pervasive as conduct involved in prior case that resulted in disbarment). But given the prolonged and repeated nature of Mr. Baber's conduct, and the other aggravating circumstances, we do not view it as dispositive that Mr. Baber's dishonesty involved one related set of circumstances. *Cf. In re Cleaver-Bascombe*, 986 A.2d at 1191, 1199-1201 (D.C. 2010) (per curiam) (disbarring attorney for falsifying single voucher seeking compensation from court and then lying about voucher). The Board also relied on Mr. Baber's eventual withdrawal of his suit against Ms. Gripper, but we do not view that circumstance as weighing significantly against disbarment, particularly given that Mr. Baber has at no point during the disciplinary proceedings showed remorse or accepted responsibility for his misconduct.

Considering the circumstances of this case as a whole, we conclude that Mr. Baber demonstrated repeated "indifference to the obligations of honesty in the judicial system and to the duty of loyalty he owed" to Ms. Gripper. *Howes*, 52 A.3d at 16. We further conclude that Mr. Baber has shown himself to lack the "moral rectitude needed to be a member of the legal profession." *Id.* Disbarment of Mr. Baber is therefore warranted, in order "to protect the public, the courts, and the legal profession . . . ." *Id.* at 15 (internal quotation marks omitted).

Finally, we consider the "mandate to achieve consistency." *Vohra*, 68 A.3d at 771. We recognize that "[p]erfect consistency is not achievable in this area," *Silva*, 29 A.3d at 927, because the "imposition of sanctions in bar discipline . . . is not an exact science but may depend on the facts and circumstances of each particular proceeding," *Goffe*, 641 A.2d at 463. Nevertheless, we conclude that disbarment rather than suspension is more consistent with our prior cases. We have disbarred a number of attorneys in circumstances comparable to those of the present case. *See, e.g.*, *Cleaver-Bascombe*, 986 A.2d at 1198-1200 (rejecting Board's recommendation of suspension and instead disbarring attorney who submitted single false voucher for compensation from court and then lied under oath about voucher; attorney had no prior disciplinary record and did not obtain payment for voucher; court notes that effort to steal public funds is not meaningfully different from effort to steal client funds); *In re Pelkey*, 962 A.2d 268, 280-82 (D.C. 2008) (accepting Board's recommendation of disbarment of attorney who acted dishonestly in business dispute by engaging in conduct that "amount[ed] to theft," lied about his conduct, and filed frivolous pleadings; although attorney had no prior disciplinary record, attorney showed no remorse and had committed "persistent, protracted, and extremely serious and flagrant acts of dishonesty" over several years); *In re Corizzi*, 803 A.2d 438, 441-43 (D.C.

2002) (accepting Board's recommendation of disbarment of attorney who suborned perjury from clients in two separate matters and lied to Board about conduct; even if attorney was not acting for personal gain, attorney's conduct was "egregious" and "reprehensible," attorney showed no remorse, attorney was also found to have committed other serious ethical violations, and there were no mitigating circumstances); *Goffe*, 641 A.2d at 463-68 (rejecting Board's recommendation of suspension and instead disbarring attorney who submitted fabricated documents in two separate matters, once to benefit fiancee and once to benefit himself; although attorney had no prior disciplinary record, attorney's conduct was blatant and egregious, conduct extended over several years, attorney testified falsely about conduct and showed no contrition, and there were no other mitigating circumstances).

Conversely, the cases in which we have imposed suspension generally involve circumstances significantly less aggravated than those of the present case. Most significantly, none of them involve an attorney baselessly and maliciously attacking the client whose interests the attorney was charged with protecting. *See, e.g.*, *Vohra*, 68 A.3d at 771-73 (accepting Board's recommendation of three-year suspension, where attorney failed to properly file immigration documents on behalf of clients, never informed clients that visa applications had been rejected, forged

clients' signatures on renewed applications, and lied to clients about status of applications; attorney refunded clients' fee and showed some remorse, and attorney's conduct was not pervasive and was not "grounded in malice"); *Silva*, 29 A.3d at 941-47 (accepting Board's recommendation of three-year suspension, where attorney lied about filing easement on behalf of client, forged signatures on document, and lied under oath during disciplinary process; attorney's conduct was not prolonged, related to single matter, and did not involve "abuse[ of] the attorney-client relationship"); *In re Daniel*, 11 A.3d 291, 299-301 (D.C. 2011) (imposing three-year suspension instead of one-year suspension recommended by Board, where attorney hid assets and lied to the Internal Revenue Service to avoid paying taxes, showed lack of remorse during disciplinary process, lied to Hearing Committee, and had previously been informally admonished; no indication that attorney's conduct harmed client); *In re Kline*, 11 A.3d 261, 265-67 (D.C. 2011) (imposing three-year suspension instead of eighteen-month suspension recommended by Board, where attorney's negligence led to default judgment and attorney negotiated settlement without informing client of default judgment, forged client's signature on settlement agreement, and used own funds to pay settlement; attorney's conduct was not protracted, attorney demonstrated remorse and cooperated with disciplinary investigation, and attorney had no prior disciplinary history); *In re Slaughter*, 929 A.2d 433, 446-48 (D.C. 2007) (accepting Board's

recommendation of three-year suspension, where attorney fabricated documents over a period of years to mislead attorney's law firm about attorney's relationship with client; although attorney had not expressed remorse or sought to reimburse firm for loss firm suffered, attorney had no prior disciplinary violations, attorney did not defraud client for personal gain, no indication that client was prejudiced, and no indication that attorney lied to court or submitted false documents to court).

We recognize that we ordinarily owe deference to the Board's recommendation as to the proper sanction to be imposed. The Board viewed it as a close question whether Mr. Baber should be disbarred. We take a significantly different view of the seriousness of Mr. Baber's conduct, however, and we are convinced that disbarment is the proper sanction. In such circumstances, this court has not hesitated to reach its own conclusion. *See, e.g.*, *Howes*, 52 A.3d at 14-25 (disbarring attorney, despite Board's recommendation that attorney be suspended); *Cleaver-Bascombe*, 986 A.2d at 1198-1200 (same); *Goffe*, 641 A.2d at 464 (same).

\*       \*       \*       \*       \*

For the foregoing reasons, Mr. Baber is disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of disbarment

shall run from the date that Mr. Baber files an affidavit in accordance with District of Columbia Bar Rule XI, § 14 (g). Reinstatement shall be conditioned on Mr. Baber paying restitution to Ms. Gripper in the amount of $8,093.75, plus interest.

*So ordered.*