*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-BG-054

IN RE HARRY TUN, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia
(Bar Registration No. 416262)

On Report and Recommendation
of the Board on Professional Responsibility
(Bar Docket No. 2017-D215)
(Board Docket No. 19-BD-019)

(Argued October 26, 2022                    Decided December 22, 2022)

*Abraham C. Blitzer* for respondent.

*Myles V. Lynk*, Senior Assistant Disciplinary Counsel, with whom *Julia L. Porter*, Deputy Disciplinary Counsel, was on the brief, for the Office of Disciplinary Counsel.

Before EASTERLY and ALIKHAN, *Associate Judges*, and RUIZ, *Senior Judge*.

ALIKHAN, *Associate Judge*: Considering the record before it, including Disciplinary Counsel's recommendations, the Ad Hoc Hearing Committee's report, and the respondent's counterarguments, the D.C. Board on Professional Responsibility concluded that Harry Tun had violated numerous Maryland Rules of Professional Conduct by committing serious acts of repeated dishonesty. Despite

the Hearing Committee's recommendation that Mr. Tun be suspended for three years with a fitness requirement, the Board concluded that he should be disbarred. Because Mr. Tun concedes that he violated the charged rules, and because disbarment is within the acceptable range of outcomes for misconduct of this magnitude, we agree with the Board's recommendation and disbar Mr. Tun from the practice of law in the District of Columbia.[1]

## I. Factual Background

### A. Mr. Tun's D.C. Bar Membership and Disciplinary History

Mr. Tun has been a member of the District of Columbia Bar since 1988. From 1993 to the present, he has received a total of five informal admonitions from the D.C. Office of Disciplinary Counsel (formerly the Office of Bar Counsel) and two suspensions from this court for violating various professional rules.

Mr. Tun's disciplinary history is long, but we review it to provide an accurate timeline of his misconduct. Mr. Tun received his first informal admonition in November 1993 for violating D.C. R. Prof. Conduct 1.4(a) (failing to communicate

---

[1] This court is able to discipline Mr. Tun for his violations of the Maryland Rules of Professional Conduct because the conduct giving rise to this proceeding had "its predominant effect in another jurisdiction in which the lawyer is also licensed to practice." D.C. R. Prof. Conduct 8.5(b)(2)(ii); *see In re Johnson*, 158 A.3d 913, 915 n.1 (D.C. 2017) ("A lawyer admitted to our bar may be disciplined here for conduct occurring in another jurisdiction, and in appropriate cases, as here, subject to discipline here based on the ethics rules of the other jurisdiction.").

with a client) and 1.5(b) (failing to provide a client with a written fee arrangement). He received his second in February 1995 for violating then-Rule 1.15(b) (failing to properly transmit funds to a third party). His third came in February 2004, this time for violating Rules 1.15(a) (failing to maintain records of a client's settlement agreement) and 1.16(d) (failing to provide a client's file). He received his fourth in October 2011 for violating Rule 1.6(a) (improperly disclosing a client's confidences). And his fifth and final informal admonition came in October 2013 for violating Rule 4.3(a)(1) (improperly advising an unrepresented person despite a potential conflict with his client's interests).

An informal admonition is a form of discipline. *See* D.C. Bar R. XI, § 3(a)(5). Each letter of admonition that Mr. Tun received specified the rules he had violated and explained that the admonition constituted discipline pursuant to D.C. Bar R. XI, § 3. And even though a recipient of an informal admonition can request a formal hearing to challenge the charges, D.C. Bar R. XI, § 8(b), Mr. Tun did not do so.

In addition to being informally admonished, Mr. Tun was suspended in both 2011 and 2018 for separate violations of the District of Columbia's professional rules. In 2011, he received an 18-month suspension (with six months stayed in favor of a one-year term of probation) for filing inaccurate Criminal Justice Act vouchers with the Superior Court of the District of Columbia between 1999 and 2003. *See In*

*re Tun* (*Tun I*), 26 A.3d 313, 314 (D.C. 2011) (per curiam). His submissions double-billed for work he had done, resulting in $16,034 of overpaid funds. *Id.* Mr. Tun and Disciplinary Counsel eventually filed a petition for negotiated discipline, which this court accepted at the Hearing Committee's recommendation. *Id.* at 314-15.

The proceedings for *Tun I*, however, spawned yet another disciplinary action. In 2018, Mr. Tun was suspended for one year for lying on a motion to recuse. *See In re Tun* (*Tun II*), 195 A.3d 65, 68-72 (D.C. 2018). The motion, which Mr. Tun filed while the *Tun I* proceedings were ongoing, falsely stated that the *Tun I* investigation had concluded without any disciplinary action being instituted against him. *Id.* at 69-70. In an effort to avoid blame for that misconduct, Mr. Tun also gave intentionally false testimony to the Hearing Committee during the *Tun II* proceedings. *Id.* at 74. While the Hearing Committee and Board both recommended a one-year suspension, only the Board recommended an additional fitness requirement. *Id.* at 71-72. After reviewing comparable cases and determining that a showing of fitness was unnecessary, we suspended Mr. Tun for one year. *Id.* at 79.[2]

---

[2] One member of the panel would have imposed a fitness requirement. *Tun II*, 195 A.3d at 79 (Glickman, J., concurring in part and dissenting in part).

## B.  The Present Violations

Mr. Tun was admitted to practice before the U.S. District Court for the District of Maryland in March 1993.  He subsequently applied to renew his membership six times:  in May 1997, March 1999, March 2002, March 2005, March 2011, and July 2017.  Each application asked whether Mr. Tun had ever "been denied admission to practice, disbarred, suspended from practice, or disciplined by any court or bar authority."  On the first five renewal applications, he answered "no" even though he had received one or more informal admonitions before each application.  On the sixth, which he submitted after his 2011 suspension, he answered "yes," disclosing the suspension but none of the informal admonitions. The renewal application also asked whether Mr. Tun was the subject of any pending disciplinary proceedings.  To his credit, he answered "yes" to this question on his fifth renewal application, which he submitted while *Tun I* was ongoing.  But he answered "no" to this question on his sixth renewal application, even though he was in the middle of the proceedings that would ultimately result in his second suspension.  In each application, Mr. Tun "declare[d]" or "certif[ied]" under penalty of perjury that his responses were true.

In August 2017, Mr. Tun wrote a letter to the district court admitting that his answer to the pending discipline question in his sixth renewal application was false. Mr. Tun claimed that he had believed that the question only referred to disciplinary

actions pending in Maryland, despite having reported the pending District of Columbia disciplinary proceeding in his fifth renewal application.

## II.     Procedural History

After receiving Mr. Tun's letter, a district court employee informed the D.C. Office of Disciplinary Counsel about the false statements in Mr. Tun's sixth renewal application, and Disciplinary Counsel opened an investigation.  In March 2019, Disciplinary Counsel served Mr. Tun with a specification of charges related to his false statements on all six renewal applications, alleging violations of Maryland Rules of Professional Conduct 19-303.3(a)(1) (knowingly making a false statement of fact or law to a tribunal), 19-308.4(b) (committing a criminal act reflecting adversely on the attorney's honesty, trustworthiness, or fitness as an attorney), 19-308.4(c) (engaging in conduct involving dishonesty), and 19-308.4(d) (engaging in conduct that seriously interferes with the administration of justice).  Mr. Tun filed an answer admitting to essentially all of the specification's factual allegations.  After briefing, both parties presented arguments and testimony before an Ad Hoc Hearing Committee.

At the hearing, Mr. Tun initially claimed that he had not fully understood that informal admonitions were a form of discipline when he submitted his renewal applications.  He also claimed that he had not thought it necessary to report District

of Columbia disciplinary proceedings in his renewal applications in Maryland federal court, repeating his explanation from the 2017 letter. Later in the hearing, however, Mr. Tun admitted that he had understood the informal admonitions to be forms of discipline and that he had "made a mistake" by omitting them from the applications.

In his post-hearing briefing, Mr. Tun conceded that his failure to report the pending disciplinary matter in his sixth renewal application constituted perjury and violated Maryland Rules 19-303.3(a)(1) and 19-308.4(b) to (d). But, somewhat contradicting his hearing testimony, he again claimed ignorance about the true disciplinary nature of his informal admonitions and argued that those omissions were not perjurious. As to an appropriate sanction, Mr. Tun contended that he should only be suspended for one year. Disciplinary Counsel, in contrast, recommended disbarment.

Upon consideration of the evidence and briefing, the Hearing Committee concluded that Mr. Tun had been fully aware of each informal admonition and had known that each constituted discipline. It also determined that he had given intentionally false testimony at the hearing in attempting to explain why he had omitted them. With respect to Mr. Tun's failure to disclose his ongoing disciplinary proceeding in his sixth renewal application, the Committee found that he had

committed perjury in violation of both federal and Maryland law. It also found that he had given intentionally false testimony at the hearing by claiming that he did not know that he needed to report District of Columbia discipline to the Maryland federal court.

The Hearing Committee ultimately concluded that Mr. Tun had violated all of the charged rules and recommended that he be suspended from the practice of law for three years. It did not recommend a fitness requirement, however, explaining that it could "envisage no fitness requirements, probation conditions, or CLE courses that [would] correct [Mr. Tun]'s disregard for the truth when he is confronted with a court submission in the future."

Before the Board, neither party took exceptions to the Hearing Committee's factual findings, but both parties lodged exceptions to its sanctions recommendation. Disciplinary Counsel continued to assert that disbarment was appropriate, while Mr. Tun advocated for an 18-month suspension without a fitness requirement. Mr. Tun also took exception to the conclusion that he had given intentionally false testimony at the hearing concerning his state of mind when he filed the renewal applications.

Given Mr. Tun's limited exceptions, the Board determined that he was not disputing the Hearing Committee's conclusion that he had violated the charged rules.

As a result, the Board's report was almost exclusively limited to the appropriate sanction. Departing from the Hearing Committee's recommendation and agreeing with Disciplinary Counsel, the Board recommended disbarment. The Board's reasoning was four-fold. First, the Board explained that Mr. Tun's protracted dishonesty over the course of more than 20 years strongly favored a sanction harsher than suspension. Second, it noted that Mr. Tun had previously been disciplined for dishonest conduct, but the sanctions in those cases had not deterred him from continued dishonesty. Third, the Board determined that aggravating factors significantly outweighed any mitigating ones.[3] Fourth and finally, the Board reviewed comparable cases and distinguished those that the Hearing Committee had cited in favor of a three-year suspension as being "not sufficiently comparable . . . because they d[id] not involve the protracted dishonesty found here."

---

[3] In its analysis of this third consideration, the Board addressed Mr. Tun's exception to the Committee's determination that he had given intentionally false testimony at the hearing. The Board concluded that Mr. Tun had not intentionally lied to the Committee but instead had given "ineffectual explanations as to why he thought he could lie on the renewal forms." Even so, this was not exculpatory. The Board found that his testimony actually established—perhaps more disconcertingly—that he was capable of internally justifying his own dishonesty.

Disciplinary Counsel did not take exception to the Board's recommendation, but Mr. Tun submitted a one-paragraph letter of exception and subsequently filed a brief in this court.[4]

### III. Discussion

Mr. Tun has conceded that he violated each of the charged rules, and we conclude that the Hearing Committee's and Board's findings on this front are supported by substantial evidence. D.C. Bar R. XI, § 9(h)(1) (providing that this court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record"). Therefore, the only issue before us on appeal is the appropriate sanction. The Board contends—and Disciplinary Counsel agrees—that disbarment is necessary. Mr. Tun instead advocates for a two-year suspension without a fitness requirement. We agree with the Board.

### A. Standard of Review

"The Board's recommended sanction 'comes to us with a strong presumption in favor of its imposition.'" *In re McClure*, 144 A.3d 570, 572 (D.C. 2016) (per curiam) (quoting *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam)).

---

[4] Mr. Tun's letter did not provide a clear basis for his exception and merely stated: "Please be advised that Respondent Harry Tun hereby notes his exception to the report and recommendation filed by the Board on Professional Responsibility on February[ ]2, 2022, in this matter."

We "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). And although we are evaluating misconduct under the rules of another jurisdiction, we make sanctions determinations pursuant to District of Columbia law. *See, e.g.*, *In re Ponds*, 888 A.2d 234, 240-45 (D.C. 2005) (applying District law in a case where the respondent was charged with violating the Maryland Rules of Professional Conduct).

## B.     Sanctions Factors

When determining the appropriate disciplinary sanction, we evaluate "(1) the seriousness of the conduct, (2) [any] prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013).

In light of the Board's thorough analysis of the sanctions factors—and the lack of any meaningful challenge to it from Mr. Tun—we forgo an in-depth discussion of the topic here. In brief, we agree with the Board that the sanctions factors weigh heavily in favor of a harsher sanction given the serious nature of the misconduct, which involved more than 20 years of repetitive, dishonest behavior.

We also note that this is Mr. Tun's third visit to our court for violating our rules of professional conduct (and his eighth time being subject to discipline in our jurisdiction). Both of his prior suspensions involved dishonest conduct, and his 2018 suspension was for precisely the same type of dishonest behavior at issue here: making false statements to a court. *See Tun II*, 195 A.3d at 74 ("This case involves respondent's dishonesty to the court in [a] recusal motion[.]"). Making matters worse, his statements before the Hearing Committee in *Tun II* were found to have been "intentionally false." *Id.*

Mr. Tun's disciplinary history demonstrates a clear disregard for the candor we expect from all members of our bar. He has repeatedly exhibited an inability to learn from his mistakes or correct his behavior, even after facing discipline. As one member of our court observed in *Tun II*, "[w]arnings and chastisements failed to impress [Mr. Tun] with the need to conform to ethical standards of practice." *Id.* at 80 (Glickman, J., concurring in part and dissenting in part). We do not take Mr. Tun's long record of rule violations lightly, and that record greatly influences our decision today.

### C.    Comparable Cases

Turning to an analysis of comparable cases, we review our disciplinary precedents and will adopt the Board's recommended sanction as long as it "falls

within [a] wide range of acceptable outcomes." *In re Martin*, 67 A.3d at 1053. Mr. Tun cites only two cases in support of his argument for a lesser sanction, but neither counsels in favor of a more lenient outcome.

In the first case, *In re Silva*, 29 A.3d 924 (D.C. 2011), we imposed a three-year suspension with a fitness requirement on an attorney who had forged an easement agreement between his client and several adjacent property owners and then lied to his client about the forgery. *Id.* at 925. During the disciplinary proceedings, the attorney acknowledged his wrongdoing but blamed it on his struggles with substance addiction and "other personal problems." *Id.* at 926. The Hearing Committee recommended disbarment, but the Board recommended a three-year suspension with a fitness requirement.[5] *Id.* On appeal, we adopted the Board's recommendation. *Id.* at 929.

While *In re Silva* involved dishonest conduct, that case differs from Mr. Tun's in several significant ways. First, Mr. Silva's dishonesty was largely confined to a

---

[5] While a three-year suspension with a fitness requirement seems far less drastic than outright disbarment (which requires that the disbarred attorney wait at least five years before seeking readmission), we note that a demonstration of fitness is an onerous—and sometimes insurmountable—obstacle to overcome. *See In re Cater*, 887 A.2d 1, 25 (D.C. 2005) ("[W]hile a fitness requirement is not quite as severe an enhancement as disbarment, it comes close; as we have explained, it can transform a thirty-day suspension into one that lasts for years."). The two sanctions are thus more practically similar than their names might suggest.

single transaction of forgery and its accompanying misrepresentations. *See id.* at 925. It did not involve multiple, separate incidents of dishonesty over the course of nearly two decades. Second, we gave significant weight to the Board's recommendation as a starting point for our analysis in that case. *See id.* at 926 ("We think a strong enough case for rejecting the Board's recommendation has not been made."). Here, the Board's recommendation is disbarment and, under *In re Silva*, we give it great weight.

In the second case Mr. Tun cites, *In re Slaughter*, 929 A.2d 433 (D.C. 2007), we also suspended the attorney for three years with a fitness requirement after he engaged in a series of lies (first through forgeries and subsequently through false statements to his law firm and others) mischaracterizing the nature of an attorney-client relationship. *Id.* at 437-39. Both the Hearing Committee and the Board recommended a three-year suspension with a fitness requirement. *Id.* at 440. On appeal, we adopted that recommendation. *Id.* at 448.

Certain language from *In re Slaughter*, like the opinion's references to Mr. Slaughter's "repeated acts of dishonesty," paints the case in a similar light to the

present one. *Id.* at 447. But on the whole, *In re Slaughter* does not help Mr. Tun.

Crucially, we explained:

> Were it not for our deferential standard of review with respect to the Board's recommendation, *we would have no hesitation in ordering disbarment.* We note, however, that Bar Counsel has filed no exception to the Board's report and recommendation and characterizes the Board's proposed sanction as "warranted and not inconsistent with dispositions in comparable cases." We have recently recognized that . . . [the] *imposition of a sanction more severe than that recommended by Bar Counsel should be the infrequent exception rather than the rule.* We, therefore, have decided to adopt the Board's recommendation, which falls within, *though on the lenient side of,* the appropriate range in this area.

*Id.* at 447 n.9 (emphases added). We could not have been clearer in the above-quoted language that we would have disbarred Mr. Slaughter if the Board had recommended it. Here, in contrast, the Board contends that disbarment is appropriate. Therefore, as with *In re Silva*, the rationale behind imposing a lesser sanction in *In re Slaughter* works in reverse here and actually militates in favor of a more severe sanction.

Two additional points distinguish the present case from *In re Silva* and *In re Slaughter*. First, neither respondent had disciplinary histories comparable to Mr. Tun's five informal admonitions and two suspensions. *See In re Silva*, 29 A.3d at 943 (noting, in the Board's report and recommendation, that Mr. Silva had no prior discipline in the District and only one instance of discipline in Virginia); *In re*

*Slaughter*, 929 A.2d at 447 (noting Mr. Slaughter's lack of disciplinary history). Second, neither *In re Silva* nor *In re Slaughter* involved dishonesty directed at a tribunal, something we have repeatedly called "an extremely serious ethical violation." *See, e.g.*, *In re Johnson*, 275 A.3d 268, 277 (D.C. 2022) (per curiam) (quoting *In re Ukwu*, 926 A.2d 1106, 1140 (D.C. 2007)). An attorney's lack of candor with a judicial tribunal, especially under the penalty of perjury, casts serious doubt on his fitness to practice law. Accordingly, *In re Silva* and *In re Slaughter* do not persuade us to give Mr. Tun a more lenient sanction.[6]

On the opposite end of the spectrum, two cases in particular support disbarring Mr. Tun. The first, *In re Corizzi*, 803 A.2d 438 (D.C. 2002), involved an attorney who had instructed two clients to give false deposition testimony and then lied to the

---

[6] We also briefly address the trio of cases the Hearing Committee relied on in support of a three-year suspension. None of those cases featured misconduct comparable to the protracted dishonesty present here, and in each case we merely adopted the Board's unchallenged recommendation. *See In re Rohde*, 234 A.3d 1203, 1203 (D.C. 2020) (per curiam) (adopting the Board's recommended sanction of a public censure for a single instance of dishonesty where neither party took exception to that recommendation); *In re Adkins*, 219 A.3d 524, 524 (D.C. 2019) (per curiam) (adopting the Board's recommended sanction of a three-year suspension with a fitness requirement for concealing a hit-and-run conviction and other misrepresentations on a single application where neither party took exception to that recommendation); *In re Small*, 760 A.2d 612, 613 n.1, 614 (D.C. 2000) (per curiam) (adopting the Board's recommended sanction of a three-year suspension with a fitness requirement for failing to update a D.C. Bar admission application where neither party took exception to that recommendation).

court and opposing counsel about his attorney-client relationship with a third client. *Id.* at 440-41. Both the Hearing Committee and Board found that Mr. Corizzi had violated D.C. R. Prof. Conduct 3.3(a), 3.4(b), and 8.4(c) (analogues to two of the Maryland rules Mr. Tun violated here) by suborning the perjury of his clients and recommended that he be disbarred. *In re Corizzi*, 803 A.2d at 440-41. On appeal, we adopted that recommendation. *Id.* at 443.

In our decision, we explained that "perjury and perjury-related offenses involve moral turpitude per se." *Id.* at 442. Under District of Columbia law, formal convictions for crimes of moral turpitude mandate disbarment. *See* D.C. Code § 11-2503(a) ("When a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, . . . the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and such person shall thereafter cease to be a member."). We clarified, however, that a "lawyer *need not actually be convicted* of a crime of moral turpitude in order to be disbarred on the basis of the underlying conduct." *In re Corizzi*, 803 A.2d at 442 (emphasis added). The fact that Mr. Corizzi was never criminally charged and convicted did not save him from disbarment. *Id.* at 443; *see In re Slattery*, 767 A.2d 203, 207 (D.C. 2001) ("[A]n attorney is not immune from bar discipline under Rule 8.4 merely because a complainant or prosecuting authority has chosen not to bring criminal charges. Rather, an attorney may be disciplined for having engaged

in . . . dishonest or deceitful conduct, despite not having been prosecuted for such actions."). Here, both the Hearing Committee and the Board determined that Mr. Tun had perjured himself by submitting knowingly false renewal applications in violation of both federal and state law (a point he conceded, at least with respect to his omission of pending discipline in his sixth renewal application). Had he been criminally charged with and convicted of perjury, there would be nothing to discuss. *See In re Daum*, 69 A.3d 400, 401 (D.C. 2013) (per curiam) (holding that a perjury conviction mandates disbarment under District law). The mere fortuity that Mr. Tun was not criminally prosecuted for his misconduct does not dissuade us from imposing a harsher sanction. And while it is true that our role differs from that of the criminal justice system, our duty to protect the public and the integrity of our bar drives us to take action even when law enforcement does not.

The second case is *In re Baber*, 106 A.3d 1072 (D.C. 2015) (per curiam), where we held that a pattern of dishonest conduct over the course of multiple years warranted disbarment. *Id.* at 1077. Mr. Baber had represented a client in a probate matter despite knowing little about probate law, lied to his client and the court about various deadlines and filings, and then later sued his client to recover arbitrary fees while making numerous misrepresentations in the process. *Id.* at 1073-75. Agreeing with Disciplinary Counsel, the Hearing Committee determined that Mr. Baber had committed "flagrant dishonesty" in violating several rules, including D.C. R. Prof.

Conduct 3.3 and 8.4, and recommended disbarment. *In re Baber*, 106 A.3d at 1075. The Board, however, recommended a three-year suspension in light of Mr. Baber's lack of disciplinary history and the fact that his conduct was largely limited to a single representation. *Id.* at 1075-76. On appeal, we departed from the Board's recommendation and disbarred Mr. Baber. *Id.* at 1077.

In our ruling, we emphasized the fundamental principle that "honesty is basic to the practice of law, and that lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times." *Id.* And while a single lie certainly does not warrant our harshest sanction, we concluded that disbarment was appropriate given that "th[e] case involve[d] a *series of knowingly false statements*, not only to [the client] but also . . . in written pleadings filed in court." *Id.* (emphasis added). In other words, it was the "repeated and protracted nature of Mr. Baber's dishonesty" that tipped the scales in favor of disbarment. *Id.*; *see In re O'Neill*, 276 A.3d 492, 503 (D.C. 2022) ("[F]lagrant dishonesty provide[s] an independent basis for . . . disbarment.").

The lessons from these two cases inform our decision today. While Mr. Tun's behavior did not involve the type of dishonesty to clients present in *In re Corizzi* or *In re Baber*, the protracted and persistent nature of his misconduct, coupled with our deference to the Board, warrants disbarment. Attorneys simply cannot be trusted to

fulfill their duties to the judicial system and to the public if they flout their duty to be truthful. *See, e.g.*, *In re O'Neill*, 276 A.3d at 503 (explaining that a "continuing and pervasive indifference to the obligations of honesty in the judicial system" warrants disbarment). Mr. Tun has failed to respect that obligation again and again, leading the Hearing Committee to observe that it could "envisage no fitness requirements, probation conditions, or CLE courses that [would] correct [his] disregard for the truth." We agree and hereby revoke his membership in our bar.

## IV. Conclusion

For the foregoing reasons, Harry Tun is disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the effective date of his disbarment will not begin to run until he files an affidavit that complies with D.C. Bar Rule XI, § 14(g).

*So ordered.*