*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-BG-0578

IN RE LATIF S. DOMAN, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 466654)

On Report and Recommendation
of the Board on Professional Responsibility

(BDN: 17-BD-059; DDN: 2010-D050 & 2012-D390)

(Argued November 29, 2023      Decided May 16, 2024)

*Latif S. Doman*, pro se.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, *Julia L. Porter*, Deputy Disciplinary Counsel, and *Traci M. Tait*, Assistant Disciplinary Counsel, were on the brief, for Disciplinary Counsel.

Before MCLEESE, SHANKER, and HOWARD,* *Associate Judges*.

---

* Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court of the District of Columbia, effective December 12, 2023, Associate Judge Howard was reassigned to take her place on the division.

PER CURIAM: Disciplinary Counsel charged respondent Latif S. Doman with numerous violations of the District of Columbia Rules of Professional Conduct. A Hearing Committee concluded that only one violation (failure to keep complete records of client funds) had been proven and recommended that Mr. Doman be reprimanded. The Board on Professional Responsibility concluded that a number of violations had been proven and recommended a thirty-day suspension. Mr. Doman and Disciplinary Counsel both take exception to the Board's conclusions and recommendations.

We conclude that Mr. Doman violated several rules of professional conduct, and we adopt the Board's recommended sanction, except that we also impose a requirement that Mr. Doman prove his fitness to resume the practice of law before his suspension is lifted. For the reasons stated in this opinion, we also deny Mr. Doman's post-argument motion to dismiss the petition and vacate the Board's orders.

## I. Factual and Procedural Background

Disciplinary Counsel charged Mr. Doman with violating several rules of professional conduct. The charges arose from two separate matters. In the first matter, which we will refer to as the overdraft matter, Disciplinary Counsel charged,

among other things, that Mr. Doman: commingled entrusted client funds with his own funds, in violation of D.C. R. Pro. Conduct 1.15(a); failed to keep complete records of entrusted client funds, in violation of the same rule; and engaged in conduct that seriously interfered with the administration of justice, in violation of D.C. R. Pro. Conduct 8.4(d).  Other charges were brought in connection with that matter, but those other charges are no longer at issue, so we do not discuss them or the facts relevant solely to them.

In the second matter, which we will refer to as the employment matter, Disciplinary Counsel charged, among other things, that Mr. Doman failed to provide competent representation, in violation of D.C. R. Pro. Conduct 1.1(a) and (b).  The Hearing Committee and the Board disagreed as to whether Mr. Doman provided competent representation in the employment matter.  Because the answer to that question would not affect the sanction we impose, we choose not to decide the question.  *See, e.g.*, *In re McLain*, 671 A.2d 951, 952-53 (D.C. 1996) (declining to decide whether particular violation was proven where that violation would not affect the sanction imposed); *cf. In re Cleaver-Bascombe*, 220 A.3d 266, 269 (D.C. 2019) (per curiam) (in context of petition for reinstatement, declining to address allegation of misconduct that would not affect court's conclusion as to proper disposition of

matter).  We therefore do not discuss in any detail the circumstances of the employment matter.

## A.  Disciplinary Counsel's Investigation

The interactions between Mr. Doman and Disciplinary Counsel during the investigation of these charges are important to the resolution of this matter, so we describe those interactions in some detail.  In this part of our opinion, we rely on the documents that are part of our record, on facts that appear to be undisputed, or on the findings of the Hearing Committee and the Board on Professional Responsibility.

In September 2012, Disciplinary Counsel received a notice from TD Bank that the client trust account for Mr. Doman's law firm had been overdrawn. Disciplinary Counsel sent Mr. Doman a letter asking Mr. Doman to explain the overdraft and requesting information about transactions in the trust account for the year preceding the overdraft.  The letter attached a subpoena seeking records relating to those transactions as well as a description of Mr. Doman's procedures for handling entrusted client funds.  Mr. Doman responded by letter requesting a three-month extension of the time for compliance with subpoena.  Mr. Doman described the subpoena as broad and referred to the idea that the requested documents were

"attorney-client privileged," but he did not indicate that he was formally objecting to the subpoena or that he did not intend to comply.

Three months later, Mr. Doman sent another letter asking for an additional ninety days to respond to the subpoena. Mr. Doman also asked that the subpoena be narrowed to a period of three months, to reduce the burden of complying and to "limit[] the number of client confidences" that might be disclosed. Once again, Mr. Doman did not indicate that he was formally objecting to the subpoena or that he did not intend to comply.

Two weeks after that, Mr. Doman sent a letter stating that he was enclosing "documents and information responsive to the subpoena." Mr. Doman's letter briefly responded to questions Disciplinary Counsel had asked in its initial letter. Mr. Doman also attached three documents to his letter. The first document was a letter from TD Bank explaining that Mr. Doman's firm had ordered checks for the firm's operating account, but TD Bank had erroneously provided Mr. Doman's firm with checks that had the number of the firm's trust account, which led to the overdraft. The second document was a spreadsheet of transactions in the trust account from November 2011 to February 2013. The third document was a list of "Sources/Clients/Payors/Payees." Mr. Doman did not provide any other responsive

materials and did not indicate that he had other responsive materials but was refusing to disclose them on any ground.

Disciplinary Counsel responded by subpoenaing records of the trust account from TD Bank. Based on information obtained through those subpoenas, Disciplinary Counsel sent Mr. Doman two letters and a subpoena asking for information and records relating to a number of specific transactions in the trust account. Mr. Doman responded to those questions in a letter and an email, giving specific responses on some matters and stating that he was unable to recall others. Mr. Doman did not provide any additional records, and he did not indicate that he had such records but was refusing to disclose them on any ground.

## B. The Hearing Committee's Report and Recommendation

### 1. The Hearing Committee's Factual Findings

After an evidentiary hearing, a Hearing Committee made factual findings with respect to the overdraft matter that included the following.

Mr. Doman opened two checking accounts with TD Bank for his law firm: an operating account and a client trust account. When Mr. Doman ordered checks for the operating account, TD Bank mistakenly put the trust account number on the checks, rather than the operating-account number.

Mr. Doman testified that he kept some records and might have had handwritten notes about what clients had paid him and what he considered earned rather than unearned fees. Mr. Doman did not, however, keep a unified spreadsheet, ledger, or other standardized set of financial documents to reconcile his accounts with the balances on his bank counter receipts or bank statements. Mr. Doman did not routinely open and review his bank statements or reconcile those statements with his personal records.

Mr. Doman understood that a trust account should be reserved for entrusted funds. He routinely put client fees in the trust account and left them there until he was certain that he had earned the fees. In some cases, he left fees in the trust account until the end of a representation. Mr. Doman testified that he also used the trust account as a kind of savings account where he would segregate money that he was holding in anticipation of upcoming litigation costs. The record did not establish whether entrusted funds and personal funds were ever in the trust account at the same time.

The Hearing Committee described Mr. Doman's initial letter responding to Disciplinary Counsel's subpoena and request for information as an "object[ion]." The Hearing Committee found that Mr. Doman intended that letter and the follow-up letter to notify Disciplinary Counsel that Mr. Doman was refusing to produce

information because the information was protected by an attorney-client privilege. Mr. Doman believed that Disciplinary Counsel would file a motion to compel if Disciplinary Counsel disagreed with Mr. Doman's refusal to comply.

Mr. Doman testified that the transaction spreadsheet he provided to Disciplinary Counsel was given to him by a TD Bank employee. An employee of TD Bank testified that he did not recognize the transaction spreadsheet as a document created by TD Bank. The employee could not say definitively whether or not the spreadsheet had come from TD Bank. Disciplinary Counsel's investigator testified that three transactions appeared on the transaction spreadsheet that did not appear in any of the bank records produced by TD Bank.

## 2. The Hearing Committee's Recommendations

The Hearing Committee concluded that Disciplinary Counsel had proven a violation of D.C. R. Pro. Conduct 1.15(a), because Mr. Doman had failed to maintain complete records of his handling of entrusted funds. The Hearing Committee concluded, however, that no other charges had been proven.

With respect to the charge that Mr. Doman commingled entrusted client funds and personal funds, the Hearing Committee stated that Disciplinary Counsel had

failed to establish by clear and convincing evidence that entrusted client funds and personal funds were in the trust account at the same time.

With respect to the charge that Mr. Doman had seriously interfered with the administration of justice by refusing to cooperate with Disciplinary Counsel's investigation, the Hearing Committee reasoned that (1) Mr. Doman responded each time he was contacted by Disciplinary Counsel; (2) if Disciplinary Counsel was dissatisfied with Mr. Doman's responses, Disciplinary Counsel could have filed a motion to compel Mr. Doman to comply, but Disciplinary Counsel did not file such a motion; (3) Disciplinary Counsel's questions to Mr. Doman were "overly broad, vague and burdensome"; and (4) Mr. Doman's opposition to Disciplinary Counsel's requests did not constitute a serious interference with the administration of justice.

On the issue of sanction, the Hearing Committee found that Mr. Doman did not knowingly misrepresent any fact in his testimony. Based on the sole violation it viewed as having been established, the Hearing Committee recommended that Mr. Doman be reprimanded.

In a concurring opinion, two members of the Hearing Committee were very critical of the Office of Disciplinary Counsel in general and the Office's handling of this case in particular.

## C. The Board's Report and Recommendation

Mr. Doman and Disciplinary Counsel both filed exceptions to the Hearing Committee's Report and Recommendation.

## 1. The Board's Factual Findings

The Board adopted almost all of the Hearing Committee's findings of fact and also made findings of its own. Regarding the overdraft matter, the Board found that the first check was drawn on the trust account in November 2011, and Mr. Doman did not realize TD Bank's error until he was notified of the overdraft in September 2012. The Board also noted that Mr. Doman had testified to the Hearing Committee that the transaction spreadsheet was given to him by an unnamed TD Bank employee, that all of the information in the spreadsheet came from TD Bank, and that none of the information came from Mr. Doman. The Board described the Hearing Committee as having credited this testimony, but the Board found that the record did not support that finding. To the contrary, the Board found that Mr. Doman's testimony was not correct and that the transaction spreadsheet was not prepared by TD Bank. In support of that conclusion, the Board explained that Mr. Doman had correctly acknowledged in his brief to the Board that the spreadsheet contained information that TD Bank did not have. The Board also noted that the

spreadsheet was not on TD Bank letterhead, that Mr. Doman did not claim in his initial response to Disciplinary Counsel that the spreadsheet came from TD Bank, and that a TD Bank Vice President had testified that he did not recognize the spreadsheet as a TD Bank document and was not aware of a process by which TD Bank could have generated such a document.

## 2. The Board's Recommendations

With respect to the overdraft matter, the Board agreed with the Hearing Committee that Disciplinary Counsel had proven that Mr. Doman violated D.C. R. Pro. Conduct 1.15(a) by failing to keep complete records of client funds. The Board also agreed with the Hearing Committee that Disciplinary Counsel had failed to prove commingling in violation of D.C. R. Pro. Conduct 1.15(a).

Disagreeing with the Hearing Committee, the Board concluded that Mr. Doman had seriously interfered with the administration of justice, in violation of D.C. R. Pro. Conduct 8.4(d), by withholding responsive documents rather than complying with Disciplinary Counsel's subpoena, without expressly making a claim of privilege to refuse to comply.

On the issue of sanction, the Board found as an aggravating factor that Mr. Doman gave intentionally false testimony to the Hearing Committee when he

claimed that the transaction spreadsheet was created by TD Bank. Considering all of the circumstances, the Board recommended that Mr. Doman be suspended from the practice of law for thirty days.

Finally, the Board expressed the view that the concurring opinion of the Hearing Committee was "gratuitous," "improper[,] and wholly unhelpful."

## II. Analysis

### A. Standard of Review

In considering a recommendation of the Board, this court will defer to the Board's findings of fact if those findings are supported by substantial evidence. *In re Haar*, 270 A.3d 286, 294 (D.C. 2022). "The burden of proving disciplinary charges rests with Bar Counsel, and the Board's factual findings must be supported by clear and convincing evidence." *In re Johnson*, 275 A.3d 268, 280 (D.C. 2022) (per curiam) (internal quotation marks omitted). The Board, in turn, must defer to the findings of fact made by a Hearing Committee, unless the Hearing Committee's findings are not supported by substantial evidence. *Id.* at 275. We owe no deference to the determination of legal issues by either the Board or the Hearing Committee. *In re Krame*, 284 A.3d 745, 752-55 (D.C. 2022).

## B. Challenges to the Handling of the Investigation

Mr. Doman raises an extensive array of challenges to Disciplinary Counsel's handling of the investigation that led to the disciplinary charges against him. Among many other things, Mr. Doman argues that Disciplinary Counsel (1) lacked authority to further investigate an overdraft that was the bank's error; (2) "illegally" subpoenaed trust account records from the bank; (3) impermissibly directed interrogatories to Mr. Doman during the investigation; (4) made unreasonable demands for "privileged and confidential" documents; (5) retaliated against Mr. Doman when Mr. Doman refused to comply with unreasonable demands for documents and information; and (6) lacked probable cause to bring any charges against Mr. Doman, instead bringing charges that were "not supported by any evidence." We see no adequate basis for those arguments.

First, it is true that early in the investigation TD Bank wrote a letter explaining the mistake that the bank had made and the role that the bank's mistake played in the overdraft. Nevertheless, we view it as reasonable for Disciplinary Counsel to continue to investigate, not only to determine whether the bank's explanation was accurate but also to address the obvious concerns raised by the fact that Mr. Doman did not discover the bank's mistake for over a year, until he was notified that the mistake had led to an overdraft in the trust account.

Second, Mr. Doman's arguments that the subpoena to the bank was illegal appear to be frivolous. To the extent that Mr. Doman argues that the subpoena violated his Fourth Amendment right to be from unreasonable searches and seizures, D.C. Bar R. XI, § 20(c) provides that an attorney who opens a trust account at a bank is "conclusively deemed to [have] consent[ed]" to the bank's providing information about the account to Disciplinary Counsel. To the extent that Mr. Doman relies in passing on the Fifth Amendment privilege against self-incrimination, Mr. Doman does not explain how that privilege was implicated by the subpoena to the bank, and we see no reason to believe that the subpoena raised Fifth Amendment concerns.

Third, in support of his claim that Disciplinary Counsel lacked authority to ask Mr. Doman to respond to written requests for information, Mr. Doman relies on *In re Artis*, 883 A.2d 85, 101 (D.C. 2005). We said in *Artis* that "interrogatories, as provided for under civil court rules, should not be incorporated into the disciplinary process without promulgation of rules governing their use." *Id.* After our decision in *Artis*, however, the Board promulgated a rule governing written requests by Disciplinary Counsel for information from respondents and others. Bd. Pro. Resp. R. 2.9.

Fourth, we are not persuaded by Mr. Doman's broad argument that he was entitled to refuse to comply with Disciplinary Counsel's subpoena and to refuse to

respond substantively to Disciplinary Counsel's requests for information, because the information Disciplinary Counsel sought was confidential and privileged client information. As we have explained, the "argument that compliance with [Disciplinary Counsel's] subpoena would breach respondent's ethical obligation to preserve confidences of former clients is unavailing." *In re Confidential*, 703 A.2d 1237, 1238 (D.C. 1997) (per curiam). As we also noted in *In re Confidential*, Disciplinary Counsel's authority to subpoena financial records relating to an attorney's representation of clients "does not depend on the filing of a complaint by a client." *Id.* The Rules of Professional Conduct are designed to protect the interests of clients. *Id.* "[I]t would be strange, indeed, if an attorney could frustrate that very purpose, by asserting the attorney-client privilege" "as a shield . . . to prevent scrutiny by the court of [the attorney's] records to determine whether or not [the attorney] is meeting [the attorney's] fiduciary and ethical obligations to a client." *Id.* (internal quotation marks omitted).

We also are not persuaded by Mr. Doman's argument that he had a right to decline to provide records and information in response to the subpoenas and written inquiries because the subpoenas and written inquiries were overly broad, vague, and unreasonably burdensome, and sought information that was not pertinent. It is true that the Hearing Committee described the written inquiries as "overly broad, vague

and burdensome." We view that as a conclusion of law, rather than a purely factual finding entitled to deference, and we disagree with the Hearing Committee's conclusion. The first subpoena reasonably sought information about information in the trust account in the year preceding the overdraft. After receiving information from TD Bank, Disciplinary Counsel not unreasonably expanded the scope of its subpoena to eighteen months. The written inquiries were in our view reasonably directed at issues Disciplinary Counsel was investigating. We also note, as we explain more fully in Part II.C *infra*, that Mr. Doman never actually stated to Disciplinary Counsel during the investigation that he was asserting a right to refuse to comply with the subpoenas or to refuse to respond substantively to the written inquiries.

Fifth, we see no basis for Mr. Doman's assertion that Disciplinary Counsel brought charges against him to retaliate against him for asserting a right to refuse to provide records or information. Among other things, Mr. Doman neither had nor actually asserted such a right.

Finally, given that we uphold a number of the charges brought by Disciplinary Counsel, we obviously do not agree with Mr. Doman that all of the charges were "not supported by any evidence."

## C. Specific Rule Violations

## 1. Failure to Keep Complete Records

We uphold the conclusion of the Hearing Committee and the Board that Mr. Doman was proven to have failed to keep "[c]omplete records" of client funds. D.C. R. Pro. Conduct 1.15(a). "The purpose of Rule 1.15(a) is to ensure that the documentary record itself tells the full story of how the attorney handled client . . . funds, thereby allowing for a complete audit even if the attorney or client is not available." *In re Dailey*, 230 A.3d 902, 913 (D.C. 2020) (per curiam) (internal quotation marks omitted).

It appears to be undisputed that Mr. Doman did not produce "complete records"—or virtually any records—of his handling of client funds. The Hearing Committee inferred from that failure that Mr. Doman had not kept complete records as required, and the Board upheld that conclusion. We defer to the Hearing Committee's findings of fact, including credibility determinations, unless those findings are not supported by substantial evidence. *Haar*, 270 A.3d at 294. We view the inference drawn by the Hearing Committee to be entirely reasonable.

Mr. Doman argues that he failed to produce records not because he did not have records but rather because he was exercising his right to refuse to produce them.

A number of circumstances undermine Mr. Doman's argument. First, as we have already explained, Mr. Doman did not have a legal right to refuse to produce the records at issue. Second, Mr. Doman never actually said during the investigation that he maintained complete records but was exercising a right not to produce them. Third, we view it as quite implausible that all of Mr. Doman's responsive records would have even arguably been confidential or covered by attorney-client privilege in their entirety. *See, e.g.*, *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("Typically, the attorney-client privilege does not extend to billing records and expense reports. . . . The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.") (brackets and internal quotation marks omitted). Nevertheless, Mr. Doman disclosed virtually no records, without addressing the possibility that any other records he had could have been redacted. Finally, although Mr. Doman did testify in a conclusory fashion at the hearing that he maintained complete records, he never specifically explained what those complete records actually were, instead referring generally to "books" and "notes."

In sum, we adopt the conclusion of the Hearing Committee and the Board that Mr. Doman failed to keep complete records of client funds as required by D.C. R. Pro. Conduct 1.15(a).

## 2. Commingling

Commingling is established "when a client's money is intermingled with that of [the client's] attorney and its separate identity is lost so that it may be used for the attorney's personal expenses or subjected to claims of [the attorney's] creditors." *In re Hessler*, 549 A.2d 700, 707 (D.C. 1988) (internal quotation marks omitted); *see also* D.C. R. Pro. Conduct 1.15(a) ("A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property."). Both the Hearing Committee and the Board concluded that Disciplinary Counsel failed to prove commingling by clear and convincing evidence. We agree.

There certainly was reason for concern about possible commingling. As Disciplinary Counsel points out, Mr. Doman's testimony indicated that Mr. Doman incorrectly believed that it was permissible for him to put his own funds into the client trust account, to create a margin of safety and to ensure that the trust account was not overdrawn. Proving that commingling actually occurred, however, required

evidence that client funds and personal funds were in the trust account at the same time. On that point, Disciplinary Counsel's expert testified in front of the Hearing Committee that he could not tell whether there were entrusted and non-entrusted funds in Mr. Doman's trust account at the same time. We cannot fault the Hearing Committee or the Board for declining to find commingling by clear and convincing evidence given that Disciplinary Counsel's own expert testified that he was unable to find commingling.

In this court, Disciplinary Counsel presents a mathematical analysis of the Board's findings and Mr. Doman's bank statements and argues that that analysis "show[s] conclusively that there is no way [Mr. Doman] could have avoided commingling client and non-client funds." We are not inclined, however, to disregard the conclusions of the Hearing Committee and the Board based on a fact-intensive argument that Disciplinary Counsel did not present either to the Hearing Committee or to the Board. *See generally, e.g.*, *In re Kline*, 11 A.3d 261, 265 (D.C. 2011) (declining to consider argument that Bar Counsel did not present to Board). We are particularly disinclined to do so given that Disciplinary Counsel's new argument contradicts the testimony of Disciplinary Counsel's own witness before the Hearing Committee.

### 3. Serious Interference with the Administration of Justice

We agree with the Board that Mr. Doman seriously interfered with the administration of justice, in violation of D.C. R. Pro. Conduct 8.4(d), by unreasonably failing to provide documents and information in response to Disciplinary Counsel's subpoenas and written inquiries. *See id.* cmt. [2] (explaining that Rule 8.4(d) can be violated by "failure to cooperate with Disciplinary Counsel" and "failure to respond to Disciplinary Counsel's inquiries or subpoenas"); *In re Naegele*, 225 A.3d 984, 995 (D.C. 2020) (per curiam) (attorney violates Rule 8.4(d) by "fail[ing] to respond to a request for information from Disciplinary Counsel without asserting in writing the grounds for such refusal").

We are not persuaded by Mr. Doman's arguments to the contrary. As we have already explained, Mr. Doman in our view had no reasonable basis for claiming a right to refuse to comply. We also have indicated that Mr. Doman did not actually assert such a right in his responses to Disciplinary Counsel. On that point, we disagree with the Hearing Committee, which concluded that Mr. Doman had sufficiently asserted such a right. Whether Mr. Doman adequately asserted a right to refuse to comply in his responses to Disciplinary Counsel seems to us to be an issue of law, rather than an issue of historical fact as to which we and the Board would owe deference to the Hearing Committee. In any event, we conclude that the

record does not support a conclusion that Mr. Doman asserted such a right in his responses to Disciplinary Counsel. To the contrary, as we have already described, Mr. Doman raised concerns when asking for more time to respond, but he did not assert that he was claiming a right not to comply.

Mr. Doman also argues that Disciplinary Counsel was foreclosed from charging that Mr. Doman's failure to comply with the subpoenas constituted serious interference with the administration of justice, because Disciplinary Counsel was required to first file a motion to compel compliance with the subpoenas. This court has held, however, that Disciplinary Counsel is not required to file a motion to compel before charging an attorney who refuses to comply with a subpoena with serious interference with the administration of justice. *In re Kanu*, 5 A.3d 1, 11-13 (D.C. 2010).

## D. Sanction

In determining what sanction to impose for violations of the Rules of Professional Conduct, this Court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "[A] sanction recommendation from the Board comes to us with a strong

presumption in favor of its imposition." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam) (internal quotation marks omitted). "In general, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *Id.* (internal quotation marks omitted).

We adopt the Board's recommended sanction of a thirty-day suspension from the practice of law, but we conclude that a fitness requirement is warranted.

### 1. Competence in the Employment Matter

As previously noted, Disciplinary Counsel charged that Mr. Doman had provided incompetent assistance to a client in connection with a proceeding before the Equal Employment Opportunity Commission ("EEOC"). The Hearing Committee concluded that Mr. Doman's representation of his client in that matter had been competent. The Board disagreed, concluding that Mr. Doman had failed to act with competence in one specific respect: his efforts to obtain discovery in the EEOC proceeding.

We view it as a close question whether Mr. Doman's effort to obtain discovery before the EEOC was proven to lack competence. Even assuming, however, that

Mr. Doman's handling of that aspect of the case lacked competence, we agree with the Board that an isolated failure to represent a client competently would not by itself call for a substantial sanction. *See In re Nwadike*, 905 A.2d 221, 232 & n.6 (D.C. 2006) (citing cases). In the circumstances of this case, we conclude that our decision as to the appropriate sanction would not be affected by a conclusion, one way or the other, as to whether Mr. Doman's effort to get discovery before the EEOC fell below a standard of competence.

## 2. Knowingly False Testimony before the Hearing Committee

In assessing what sanction to recommend, the Board found by clear and convincing evidence that Mr. Doman gave intentionally false testimony before the Hearing Committee. The Board's finding involved the transaction spreadsheet that Mr. Doman provided to Disciplinary Counsel. Mr. Doman testified that he did not create that spreadsheet, that he was given the spreadsheet by a TD Bank employee, and that "all of this information, the description, the memo, all of that information was provided" by TD Bank.

As the Board explained, there was compelling evidence that this testimony was false. Specifically, the spreadsheet contains information regarding Mr. Doman's transactions that is not included in the records that TD Bank produced

to Disciplinary Counsel. Moreover, the spreadsheet was not on TD Bank letterhead, did not contain any obvious TD Bank marking, and was not accompanied by a letter or other information indicating its source. When Mr. Doman initially provided the spreadsheet to Disciplinary Counsel, he did not state that TD Bank had provided or created the spreadsheet. Finally, a representative of TD Bank testified that he did not recognize the spreadsheet as a TD Bank document and knew of no way that TD Bank could have created the spreadsheet. We also note that at oral argument before this court, Mr. Doman stated that TD Bank "helped [him] create the transaction list," which is inconsistent with Mr. Doman's testimony before the Hearing Committee.

It is not entirely clear whether the Hearing Committee viewed Mr. Doman's testimony on this point to be false. The Board interpreted the Hearing Committee as having found that Disciplinary Counsel had not proven the falsity of the testimony. Mr. Doman interprets the Hearing Committee's report and recommendation the same way. We therefore assume for current purposes that the Hearing Committee found that the testimony had not been proven to be false. Although the Board and this court are generally required to defer to the factual findings of the Hearing Committee, such deference is not required if the Hearing Committee's finding is not supported by substantial evidence. *Haar*, 270 A.3d at 294. We conclude, as the Board essentially did, that the evidence overwhelmingly

established that the testimony was false. We therefore uphold the Board's finding that Mr. Doman's testimony that the bank created and provided the spreadsheet was false.

The remaining question is whether Mr. Doman's testimony on the point was intentionally false, rather than simply mistaken. We first note that the Board applied an incorrect standard of review when determining that question. The Board stated that it owed no deference to the Hearing Committee on that question, because whether Mr. Doman's testimony was intentionally false was "a question of ultimate legal fact." After the Board's report and recommendation in this case, however, we decided *In re Krame*, 284 A.3d 745 (D.C. 2022). In *Krame*, acknowledging that our prior decisions had not been clear on the point, we held that even where a respondent's state of mind goes to an "ultimate fact," the Board and this court are ordinarily required to defer to the Hearing Committee's credibility determinations unless those determinations are not supported by substantial evidence. *Id.* at 752-56.

If the Hearing Committee had made a clear finding that Mr. Doman's testimony about the spreadsheet, even if false, was not proven to have been intentionally false, then the Board and this court would have been obliged to defer to that finding unless the finding was not supported by substantial evidence. We do not, however, understand the Hearing Committee to have made such a finding. The

Hearing Committee did find generally that Mr. Doman had not given intentionally false testimony. In making that general finding, however, the Hearing Committee did not focus specifically on Mr. Doman's testimony about the spreadsheet. Moreover, we are assuming, as Mr. Doman has argued, that the Hearing Committee found that Mr. Doman's testimony about the spreadsheet had not been proven to be false. As we have explained, we agree with the Board that Mr. Doman's testimony about the spreadsheet was overwhelmingly shown to have been false. The Hearing Committee never addressed the question whether, if Mr. Doman's testimony about the spreadsheet actually was false, that falsity was or was not intentional. Under the circumstances, we do not believe that either the Board or this court is bound by a finding that the Hearing Committee had no need to make and did not specifically make.

In cases where the Hearing Committee has not made a finding on a factual matter, the Board's rules permit the Board to make its own finding. Bd. Pro. Resp. R. 13.7 (Board may "expand the findings" of Hearing Committee; "[w]hen making its own findings of fact, the Board shall employ a 'clear and convincing evidence' standard"); *Haar*, 270 A.3d at 294 (Board may make findings of fact in first instance). The Board here found by clear and convincing evidence that Mr. Doman's testimony about the spreadsheet was intentionally false. We are

required to defer to that finding unless it is unsupported by substantial evidence. *Id.* We conclude that the substantial evidence supports the Board's finding.

As the Board explained, Mr. Doman repeatedly testified that the bank had created the spreadsheet, so Mr. Doman's testimony on that point was not a temporary memory lapse or an inadvertent slip of the tongue. Moreover, Mr. Doman was in a position to know whether he or the bank created the document, and there is no suggestion that he had any reason to be confused on the point or to have suffered a memory lapse. Under the circumstances, we conclude that there was substantial support in the record for the Board's finding by clear and convincing evidence that Mr. Doman's testimony to the Hearing Committee about the spreadsheet was intentionally false.

### 3. Length of the Recommended Suspension

"When determining the appropriate disciplinary sanction, we evaluate (1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances." *In re Blackwell*, 299 A.3d 561, 573 (D.C. 2023) (internal quotation marks omitted).

The Board recommended a thirty-day suspension from the practice of law. In pertinent part, the Board's reasoning was as follows. (1) Sanctions for failing to keep complete records as required by Rule 1.15(a) fall on the low end of the range of available sanctions. *See, e.g.*, *In re Harris-Lindsey*, 242 A.3d 613, 625 (D.C. 2020) (informal admonition). (2) The failure to respond to Disciplinary Counsel's investigative inquiries has resulted in brief suspensions. *See, e.g.*, *In re Pullings*, 724 A.2d 600, 600-01, 602 (D.C. 1999) (per curiam) (ordering sixty-day suspension stayed for one year of probation with conditions for failing to respond to Disciplinary Counsel's inquiries and Board orders in two disciplinary matters, as well as other misconduct); *In re Cooper*, 936 A.2d 832, 833-35 (D.C. 2007) (per curiam) (ordering thirty-day suspension with fitness requirement and proof of compliance with Disciplinary Counsel's subpoena, where respondent failed to respond to inquiries and subpoena regarding discrepancies in his client trust account). (3) Mr. Doman's "protracted intentionally false testimony to the Hearing Committee" was a "serious aggravating factor." *See In re Cleaver-Bascombe*, 892 A.2d 396, 413 (D.C. 2006) ("If Bar Counsel proved that Respondent testified falsely, then this is a significant aggravating factor."). (4) Mr. Doman had not previously been subject to attorney discipline. (5) Mr. Doman did not acknowledge his misconduct.

In the Board's view, the two cases most comparable to this case are *In re Chapman*, 962 A.2d 922, 924-26 (D.C. 2009) (per curiam) (ordering sixty-day suspension, with thirty days suspended in favor of one year of probation, for neglecting to conduct discovery and deliberate dishonesty to Disciplinary Counsel), and *In re Wilson*, 241 A.3d 309, 312 (D.C. 2020) (per curiam) (ordering thirty-day suspension for violations involving conflict of interest and lack of competency, where respondent failed to acknowledge wrongful conduct and testified falsely during disciplinary hearing).

All factors considered, the Board recommended a thirty-day suspension. With respect to the length of the suspension, we conclude, essentially for the reasons stated by the Board, that thirty days "falls within a wide range of acceptable outcomes." *Baber*, 106 A.3d at 1076 (internal quotation marks omitted).

### 4. Fitness

The Board did not explicitly consider whether to impose a requirement that Mr. Doman demonstrate fitness before he could return to the practice of law after the suspension. The absence of an express discussion of a fitness requirement in the Board's report and recommendation is presumably attributable to the fact that Disciplinary Counsel did not ask the Board to recommend a fitness requirement. *Cf.*,

*e.g.*, *Cleaver-Bascombe*, 892 A.2d at 412 n.14 ("[A]lthough the court is not precluded from imposing a more severe sanction than that proposed by the prosecuting authority, that is and surely should be the exception, not the norm, in a jurisdiction, like ours, in which Bar Counsel conscientiously and vigorously enforces the Rules of Professional Conduct."). Disciplinary Counsel does argue in this court that a fitness requirement should be imposed. In theory, this court could decline to consider that argument because the argument was not presented to the Board. *Kline*, 11 A.3d at 265. We also note that the parties have indicated that Mr. Doman is not presently actively practicing law. Of course, Mr. Doman would be free to resume practice after any suspension was lifted. We also are conscious of "our duty to protect the public and the integrity of our bar" through the attorney-discipline system. *In re Tun*, 286 A.3d 538, 546 (D.C. 2022). We therefore consider whether a fitness requirement is warranted in this case.

"To require proof of fitness as a condition of reinstatement after suspension, the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *In re Peters*, 149 A.3d 253, 260 (D.C. 2016) (per curiam) (internal quotation marks omitted). In determining whether to impose a fitness requirement, we consider:

> (1) the nature and circumstances of the misconduct;
> (2) whether the attorney recognizes the seriousness of the

misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*In re Bailey*, 283 A.3d 1199, 1211 (D.C. 2022) (internal quotation marks omitted).

Three considerations, taken together, lead us to conclude that a fitness requirement is warranted in this case. First, as the Board noted, Mr. Doman has not shown any appreciation for the wrongfulness of his conduct. Mr. Doman's lack of appreciation for the wrongfulness of the conduct has continued before this court. Although we view some of Mr. Doman's arguments before this court as reasonable, many other of Mr. Doman's arguments before this court do not seem reasonable. *See generally, e.g.*, *In re Lattimer*, 223 A.3d 437, 453 (D.C. 2020) (per curiam) (stating that respondent's "failure to acknowledge wrongdoing and accept responsibility pervades his arguments to this court"). Mr. Doman's "adamant refusal to accept responsibility" is an important factor providing support for imposing a fitness requirement. *Id.*; *see also Bailey*, 283 A.3d at 1211 (stating that whether attorney recognizes seriousness of misconduct is factor to be considered in determining whether to impose fitness requirement).

Second, we have upheld the Board's finding that Mr. Doman gave intentionally false testimony before the Hearing Committee. As we have

emphasized, "an attorney who presents false testimony during disciplinary proceedings clearly does not appreciate the impropriety of his or her conduct." *Cleaver-Bascombe*, 892 A.2d at 412 (brackets and internal quotation marks omitted). That conduct too provides substantial support for imposition of a fitness requirement. *See, e.g.*, *In re Bradley*, 70 A.3d 1189, 1196 (D.C. 2013) (per curiam) (imposing fitness requirement where respondent gave intentionally false testimony to Hearing Committee; "[T]his court has been especially supportive of fitness requirements when a respondent's conduct evinces indifference (or worse) toward the disciplinary procedures by which the Bar regulates itself, such as intentionally misleading Bar Counsel during its investigation.") (brackets and internal quotation marks omitted).

Third, we have upheld the Board's determination that Mr. Doman seriously interfered with the administration of justice by unreasonably refusing to provide documents and information in response to Disciplinary Counsel's subpoenas and written questions. That conduct also provides substantial support for imposition of a fitness requirement. *See, e.g.*, *Naegele*, 225 A.3d at 995 ("In the District of Columbia, the failure to cooperate with Disciplinary Counsel is its own form of misconduct, because of the deleterious effect of withholding potentially important evidence and the failure to respect the investigatory and fact-finding authority vested

in the Board on Professional Responsibility. . . . [W]hen an attorney fails to respond to a request for information from Disciplinary Counsel without asserting in writing the grounds for such refusal . . . that attorney has violated Rule 8.4(d) of the D.C. Rules of Professional Conduct . . . . Typically, the sanction for such misconduct is a 30-day suspension, with a fitness requirement for reinstatement.").

As the foregoing indicates, this Court has frequently imposed a fitness requirement in cases involving circumstances comparable to the three circumstances we have noted: (1) a respondent's failure to appreciate the wrongfulness of the respondent's conduct; (2) a respondent's giving of intentionally false testimony before a Hearing Committee; and (3) a respondent's serious interference with the administration of justice by unreasonably refusing to comply with subpoenas and requests for information by Disciplinary Counsel. We are not aware of any case in which all three of these circumstances were present but this court did not impose a fitness requirement.

Accordingly, Latif S. Doman is hereby suspended from the practice of law for thirty days, with reinstatement conditioned on a showing of fitness. We direct Mr. Doman's attention to the requirements of D.C. Bar R. XI, § 14, governing the responsibilities of suspended attorneys.

*So ordered.*