*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-BG-0205

IN RE MATTHEW A. LEFANDE, RESPONDENT

A Suspended Member of the Bar
Of the District of Columbia Court of Appeals
(Bar Registration No. 475995)

On Report and Recommendation
Of the Board on Professional Responsibility

(BDN: 22-BD-024; DDN: 2020-D018, 2019-D050, 2019-D041, & 2018-D061)

(Submitted October 2, 2024                    Decided January 2, 2025)

*Matthew A. LeFande,* pro se.

*Hamilton P. Fox*, Disciplinary Counsel, *Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, and *Jelani C. Lowery*, Assistant Disciplinary Counsel, for Disciplinary Counsel.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: The Board on Professional Responsibility found that Matthew A. LeFande committed seven violations of the District of Columbia and Maryland Rules of Professional Responsibility. The Board was evenly split on the appropriate discipline for those violations: four members recommend a three-

year suspension with reinstatement conditioned on a demonstration of fitness, and four members recommend disbarment.

We agree that LeFande committed the alleged rules violations and agree with those Board members who recommend that he be disbarred.

## I. Factual and Procedural Background

We summarize the Board's factual findings in six parts: (1) the District Title litigation; (2) the Warren bankruptcy matter; (3) the Carvalho bankruptcy matter; (4) LeFande's personal bankruptcy matter; (5) LeFande's failure to participate in the disciplinary proceedings below; and (6) the Board's divided recommendation regarding sanctions.

### 1. The District Title litigation

District Title handled the 2014 sale of Anita Warren's property. While managing the sale, District Title erroneously wired $293,514.44 to Warren instead of Wells Fargo, Warren's mortgage lender who was the intended recipient of the funds as the holder of a security interest in the property. District Title asked Warren to return the money, but she had other ideas. She instead transferred the funds to her son, Timothy Day, and other relatives of hers. District Title sued in D.C. Superior Court to recover the money, and Warren and Day hired LeFande as their attorney in

the matter. The case was then removed to the federal district court for the District of Columbia.

In 2014, District Title moved in the district court for an injunction to prevent Warren and Day from spending the funds that were mistakenly transferred to them or from otherwise disposing of or encumbering any real property or other substantial assets. The day after District Title sought that injunction, LeFande represented Day as he closed on a sale of real property, and then directed that $82,051.81 in proceeds from that sale be wired to a New Zealand bank account affiliated with a company named Escrow Hill Limited. The Board ultimately concluded that "[d]ue to the absence of any testimony from [LeFande], his clients, or third parties," there was not substantial evidence showing LeFande himself had the intent to steal District Title's property. But it is undisputed that LeFande orchestrated the transfer that was clearly designed to conceal those assets amidst pending litigation.

The district court granted District Title's request for an injunction a few weeks later and eventually granted summary judgment—a monetary award of $293,514.44, the erroneously transferred amount, plus interest—in District Title's favor. Warren and Day did not pay the judgment, prompting District Title to seek post-judgment discovery for collection purposes. Day and Warren both passed away shortly thereafter. District Title sought to depose LeFande about Day's property sale and subsequent transfer of $82,051.81 in proceeds to the New Zealand bank account.

LeFande opposed the motion and sought a protective order, asserting his Fifth Amendment right against self-incrimination and further asserting that District Title was seeking information protected by the attorney-client privilege. The district court directed that "LeFande must sit for the deposition," and rejected LeFande's request for a protective order, concluding that he could not make a blanket assertion of privilege to avoid testifying. *Dist. Title v. Warren*, 265 F. Supp. 3d 17, 21-23 (D.D.C. 2017). He would instead need to assert any privileges on a question-by-question basis. *Id*.

LeFande then refused to sit for a deposition and was held in contempt for that refusal. As the D.C. Circuit summarized in upholding LeFande's contempt conviction, LeFande did not respond to District Title's letters, emails, or six separate attempts to make contact via process server. *In re LeFande*, 919 F.3d 554, 559 (D.C. Cir. 2019). The district court responded to those refusals by directing LeFande to sit for an in-court deposition, which LeFande also tried to avoid. LeFande filed a bankruptcy petition on behalf of Warren in an effort to stay the litigation and stall any deposition, though that bankruptcy filing was later determined to be frivolous, as discussed in the next section.

While LeFande ultimately appeared for the in-court deposition, he refused to take the stand after receiving seven court orders to do so, repeating his already-rejected arguments that the Fifth Amendment and attorney-client privilege allowed

him to avoid sitting for the deposition entirely. The court then found LeFande guilty of criminal contempt and fined him $5,000. The court issued a finding of civil contempt as well, imposing a fine of $1,000 per day until he complied with the order to sit for the deposition. It appears that LeFande has still not complied with the order to sit for a deposition.

## 2. *The Warren bankruptcy matter*

As previously mentioned, LeFande filed a bankruptcy petition on behalf of Warren while the District Title litigation was ongoing, and that petition triggered an automatic stay in the District Title litigation. The Board found that LeFande filed the petition for the improper purpose of avoiding being deposed in the District Title litigation. LeFande also filed a motion for contempt against District Title's attorneys, claiming they were violating the automatic bankruptcy stay by still trying to depose him in the District Title litigation despite the ongoing bankruptcy matter.

The bankruptcy court directed LeFande to show cause why he should not be sanctioned for making frivolous arguments in his motion for contempt. After LeFande failed to appear at the show-cause hearing, the bankruptcy court imposed monetary and non-monetary sanctions (attending "two ethical courses") against him. *In re Warren*, No. 17-22544, 2019 WL 3995976, at *9 (Bankr. D. Md. Aug. 22, 2019). The bankruptcy court found sanctions were warranted because LeFande's

contempt motion was "knowingly and egregiously misleading" and contravened "black-letter law," and the court scheduled a hearing to determine his ability to pay monetary penalties. *Id.* at \*6-7. LeFande failed to appear at that hearing and ignored multiple show-cause orders regarding why he had not timely paid penalties that were ultimately imposed (though he eventually paid them).

### 3. The Carvalho bankruptcy matter

In a matter unrelated to the District Title litigation, LeFande represented Teodora Simu in a contract dispute where she obtained a judgment against Sharra Carvalho. Carvalho then filed for bankruptcy, which triggered an automatic stay of Simu's suit. LeFande violated the stay by appealing three adverse rulings in the contract case, which caused Simu to be held in contempt.

LeFande also filed numerous motions in the bankruptcy matter—as well as a complaint against Carvalho—which the bankruptcy court found to be frivolous and sanctionable. In a lengthy decision, the court found that LeFande misrepresented facts, continued to repeat arguments that the court had already rejected, and engaged in a "bad faith pattern of harassing and impugning the character of Carvalho, her counsel, and the court." *In re Carvalho*, No. 15-00646, 2019 WL 4877272, at \*37 (Bankr. D.C. Oct. 1, 2019). This pattern included multiple instances of making "patently offensive" and unfounded accusations that opposing counsel was engaged

in fraud. *Id.* As a penalty, LeFande was ordered to pay Carvalho $32,250 in attorney's fees, plus interest.

### 4. LeFande's personal bankruptcy matter

After District Title sued LeFande in relation to his representation of Warren and Day, and while Disciplinary Counsel's investigation into LeFande was underway, LeFande filed a bankruptcy petition on his own behalf. The bankruptcy court dismissed the petition after finding that it "scream[ed] bad faith" and was "yet another of [LeFande's] efforts to manipulate the legal system with no regard for how his vexatious tactics affect others." *In re Le Fande*, 641 B.R. 430, 434 (Bankr. S.D. Fla. 2022). Noting that LeFande had "vanished"—he failed to respond to court orders and to appear at hearings—the bankruptcy court concluded that "there is little, if any, purpose to this bankruptcy beyond simply evading liability to District Title." *Id.* at 435.

### 5. LeFande's failure to participate in disciplinary proceedings

LeFande did not cooperate with Disciplinary Counsel's investigation into his conduct. For example, LeFande did not comply with or file any response to subpoenas for his client files for Warren and Day, or otherwise respond to inquiries for information. Neither did LeFande respond to Disciplinary Counsel's specification of charges or appear before the Hearing Committee or the Board.

Before this court, LeFande has not filed any exceptions to the Board's Report and Recommendation. This court directed that he show cause why he should not be suspended during the pendency of this case, and LeFande responded with a one-page letter stating that he "stand[s] by every single action [he] took to preserve" his clients' rights and proclaims that he "will not participate in a system that is so fundamentally broken." He ends the letter with the following: "Please do what you will with my law license, I have no further use for it."

6. *A majority of the Board could not agree on a recommended sanction*

The Board was evenly divided regarding the appropriate sanction for LeFande's misconduct. The Board's members disagreed about whether LeFande's conduct rose to the level of "flagrant dishonesty," which could readily serve as a basis for disbarment. *See In re Johnson*, 298 A.3d 294, 317 (D.C. 2023).

Four members, believing that LeFande was not flagrantly dishonest, recommend that we suspend LeFande from the practice of law for three years with a requirement that he demonstrate his fitness before reinstatement. They focus on the fact that Disciplinary Counsel failed to prove that LeFande knowingly helped Warren and Day commit a crime when he transferred money to the New Zealand bank account. As those members saw it, LeFande's conduct was generally not "criminal or quasi-criminal" (aside from his criminal contempt). They also opined

that Disciplinary Counsel had not used sufficient "investigative tools" to provide a basis for flagrant dishonesty, while acknowledging that Disciplinary Counsel's investigation was "[p]erhaps hampered by [LeFande's] failure to respond to its inquiries."

The other four members of the Board recommend disbarment. They reason that although LeFande's assistance to Day in wiring money to the New Zealand bank account "cannot on this record be found to be criminal," that should not be considered a mitigating circumstance that carries the day in the sanction analysis. Rather, the totality of the circumstances—including LeFande's contempt conviction, "frivolous bankruptcy filings, prolonged dishonesty, and refusal to obey court orders," as well as his "prolonged and remorseless course of misconduct"—constitute serious interference with the administration of justice over six years and support a finding of flagrant dishonesty, thus warranting disbarment.

## II. Analysis

### A. Violations

The Board unanimously concluded that LeFande violated six rules of professional responsibility: D.C. Rules 3.1 (frivolous arguments), 8.4(d) (serious interference with the administration of justice), and Maryland Rules 19-303.1 (frivolous arguments), 19-303.3(a)(1) (knowingly false statements to a tribunal),

19-308.4(c) (dishonesty, fraud, deceit, or misrepresentation), and 19-308.4(d) (conduct prejudicial to the administration of justice). And a majority of the Board concluded that LeFande also violated D.C. Rule 3.4(c) (knowingly disobeying rules of a tribunal). LeFande does not contest that he committed each of those seven infractions, and we see no independent reason to doubt that he did, so we do not scrutinize the matter further.

But the Board was evenly split as to the appropriate sanction, so we must consider the appropriate sanction de novo. *In re Addams*, 579 A.2d 190, 192 n.3 (D.C. 1990) (in cases where there is no majority recommendation on sanction, the court must "decide each case on its own particular facts" (citing *In re Haupt*, 422 A.2d 768, 771 (D.C. 1980))).

## *B. Sanction*

The Board's members were evenly divided about whether LeFande's violations warrant disbarment. Disbarment is an appropriate sanction for attorney conduct when it arises to the level of "flagrant dishonesty." *Johnson*, 298 A.3d at 317. Dishonesty that is "flagrant" is either (1) "continued and pervasive" or otherwise (2) "accompanied by aggravating factors." *Id.* Determining whether conduct rises to the level of flagrancy involves a "fact-specific approach" that considers an attorney's "particular misconduct, and not simply the rules that he

violated," *In re Guberman*, 978 A.2d 200, 206 n.5 (D.C. 2009), and whether the misconduct was "criminal or quasi-criminal," *In re Pennington*, 921 A.2d 135, 141 (D.C. 2007). As a general matter when imposing a sanction, we consider the nature and seriousness of the conduct at issue, prior discipline, prejudice to clients, the attorney's acceptance of responsibility (or lack thereof), mitigating and aggravating circumstances, and our mandate to achieve consistency in bar discipline cases. *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam).

Considering the entire record and the relevant case law, we conclude that LeFande's conduct rose to the level of flagrant dishonesty and disbarment is the appropriate sanction. LeFande's misconduct was "continued and pervasive" over a period of more than six years, with the District Title litigation as the centerpiece of his misconduct. *See Johnson*, 298 A.3d at 317. LeFande's misconduct began in 2014, when he directed $82,051.81 of Day's funds be transferred to a New Zealand bank account immediately after District Title sought an injunction to preclude dissipation of those funds. The apparent purpose of that transfer was to conceal those funds so that District Title could not recover amounts it was due. LeFande then went to great lengths—including by filing a frivolous bankruptcy petition on Warren's behalf—to evade being deposed in that case after the evidence suggested that he played a role in concealing the funds owed to District Title.

And even after the district court ordered that he submit to a deposition, LeFande refused, impeding the administration of justice and leading to a criminal contempt conviction and civil contempt finding. Moreover, in motions filed in the Warren bankruptcy proceeding, LeFande misrepresented that Warren was the only party in the District Title litigation and disguised the real reason District Title sought to depose LeFande. In two additional bankruptcy proceedings, relating to his other client Simu and himself, LeFande was responsible for a series of frivolous, bad-faith court filings and made baseless accusations against opposing counsel. With these many incidents happening over the course of several years—all reflecting a lack of "integrity" and "straightforwardness," *see In re Mitrano*, 952 A.2d 901, 925 (D.C. 2008)—it is clear that LeFande has engaged in a long-term pattern of dishonesty.

LeFande's dishonesty was also "accompanied by aggravating factors": his lack of remorse and refusal to either participate in Disciplinary Counsel's investigation or appear in any of the proceedings before the Hearing Committee or the Board. *See Johnson*, 298 A.3d at 317. That LeFande cannot be bothered to respond to accusations of serious misconduct weighs in favor of disbarment. *See, e.g.*, *In re Moawad*, 268 A.3d 820, 821-22 (D.C. 2022) (per curiam) (finding that denial of responsibility, lack of remorse, lack of attempt at restitution, and lack of cooperation during disciplinary proceedings constituted aggravating factors warranting disbarment under flagrant dishonesty theory); *In re Howes*, 39 A.3d 1,

25 (D.C. 2012) (Disbarment is proper "where, despite repeated misconduct, an attorney remains unwilling to show contrition or responsibility for his actions."). His recent letter submitted to this court—in which he doubled down and proclaimed that he stands by all of his actions—further demonstrates LeFande's lack of remorse.

Disbarment is also most consistent with our case law. This case is similar to *In re Pelkey*, where we disbarred an attorney for making false statements while under oath, stealing money from his business partners, and burdening his business partner with "frivolous appeals" and "unnecessarily protracted arbitration." 962 A.2d 268, 279-82 (D.C. 2008). Even though Pelkey had "not been subjected to prior discipline," we disbarred him while recognizing that courts had previously imposed sanctions against Pelkey for his conduct and he demonstrated a "lack of remorse . . . despite the overwhelming evidence against him." *Id.* at 282. LeFande, who likewise has no prior disciplinary history, embarked on a six-year course of frivolous filings that resulted in multiple contempt findings and impositions of sanctions against him. He has also shown comparable disdain for the disciplinary process while facing serious and well-founded charges of misconduct.

This case is also similar to *In re Bynum*, where we disbarred an attorney for making intentional misrepresentations to clients, providing false testimony to a hearing committee, and falsely blaming other counsel for his neglect towards client

matters over the course of five years. 197 A.3d 1072, 1073-74 (D.C. 2018) (per curiam). LeFande likewise made unfounded representations to multiple tribunals over several years. Moreover, like Bynum, LeFande's dishonesty was "exacerbated by his lack of remorse" and his "effort to shift the blame to others," which LeFande has done by ignoring the accountability process and pointing his finger at the disciplinary system for his troubles. *See id.* at 1074. These "hallmarks of flagrant dishonesty" tip the scales in favor of disbarment. *Id.*; *see also, e.g.*, *In re Shieh*, 738 A.2d 814, 818-19 (D.C. 1999) (reciprocally disbarring attorney after his "habitual, bad faith misuse of the judicial process" led to legal sanctions and criminal contempt convictions). While we recognize that *Pelkey* and *Bynum* are not picture-perfect analogs to the facts in this case, "we are satisfied that disbarment here is consistent with the sanction imposed in" those cases and others. *See Johnson*, 298 A.3d at 318.

Conversely, the dishonesty cases where we have imposed suspension instead of disbarment typically involve misconduct that is less "pervasive" or respondents who take some responsibility for their wrongdoing, which can serve as some limited assurance that it will not be repeated. *See, e.g.*, *In re Vohra*, 68 A.3d 766, 772-73 (D.C. 2013) (three-year suspension instead of disbarment where misconduct occurred in only one client matter and "respondent at a critical time took full responsibility for his failures"). Such cases have also involved a more deferential standard of review that does not apply in this case, because here the Board has not

recommended that LeFande be merely suspended (the Board failed to arrive at a recommendation at all). *See id.*; *see also, e.g.*, *In re Slaughter*, 929 A.2d 433, 447 & n.9 (D.C. 2007) ("Were it not for our deferential standard of review with respect to the Board's recommendation, we would have no hesitation in ordering disbarment" for respondent's "repeated acts of dishonesty" and forgery); *In re Steele*, 868 A.2d 146, 153-54 (D.C. 2005) (accepting Board's recommendation of three-year suspension for pattern of "intentional neglect and dishonesty").

We recognize that the Board declined to conclude on the record before it that LeFande intentionally helped his clients commit theft when he transferred the proceeds from the sale of Day's Maryland property to the New Zealand bank account. Such a finding would have made disbarment an easy call, as it would have involved "criminal or quasi-criminal" conduct that LeFande spent several years trying to conceal through further misconduct. *See Pennington*, 921 A.2d at 141. But even without a finding of criminality as to that initial transfer, LeFande's misconduct still includes behavior giving rise to a criminal contempt conviction. Plus, the dearth of evidence about LeFande's intent stems largely from his failure to cooperate with Disciplinary Counsel's investigation, especially given the deaths of both Warren and Day, who were presumably the only other witnesses who could have shed any meaningful light on his intent. The Board recognized that Disciplinary Counsel was

unable to obtain testimony from LeFande, his clients, or third parties because of these factors.

So we do not think the lack of clear evidence of criminal intent as to that initial transfer is of much help to LeFande; there is at least a strong appearance that he had criminal intent with respect to that transfer, while any uncertainty on the matter is largely attributable to LeFande's own malfeasance and refusal to comply with court orders directing that he provide answers about it. While we continue to express no view on whether a "successful assertion of [a] Fifth Amendment privilege . . . could form the basis for an adverse inference against" a respondent, *see In re Clark*, 311 A.3d 882, 893 n.29 (D.C. 2024) (per curiam), rejected assertions of such a privilege followed by years of contemptuous behavior seeking to avoid answering questions can surely supply such an inference.

It is also true that LeFande does not have a prior history of discipline and that the Board found LeFande's misconduct was not directly aimed at his clients; indeed, his misconduct seems to have been at least partly in his clients' interests. But as described, LeFande's misconduct was serious, protracted across multiple client matters, and accompanied by the aggravating circumstance of his unrepentant attitude towards the disciplinary process. And on the record before us, we do not see any "countervailing considerations weighing significantly against disbarment."

*Baber*, 106 A.3d at 1077. All things considered, to protect the integrity of the legal profession, and to deter future similar misconduct, we disbar LeFande.

Accordingly, it is

ORDERED that respondent Matthew A. LeFande is hereby disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of LeFande's disbarment shall not begin to run until such time as he files an adequate affidavit of compliance with D.C. Bar R. XI, § 14(g). *See* D.C. Bar R. XI, § 16(c).

*So ordered.*