*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-BG-0248

IN RE BRENDA C. WAGNER, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 267385)

On Report and Recommendation
of the Board on Professional Responsibility

(BDN: 20-BD-059; DDN: 2016-D082)

(Submitted May 1, 2025                    Decided September 4, 2025)

*Johnny M. Howard* for respondent.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, and *Hamilton P. Fox, III*, Disciplinary Counsel, for the Office of Disciplinary Counsel.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

PER CURIAM: The Board on Professional Responsibility concluded that respondent Brenda C. Wagner violated D.C. R. Pro. Conduct 4.2(a) by knowingly communicating with a represented party in a matter without the consent of the party's lawyer. The Board recommends that Ms. Wagner be publicly censured by this court. We agree with the Board's conclusion and adopt the Board's recommended sanction.

## I. Factual and Procedural Background

R. 4.2(a) provides that,

> [d]uring the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a person known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other person or is authorized by law or a court order to do so.

## A. The Hearing Committee's Initial Report and Recommendation

After an evidentiary hearing, the Hearing Committee found that the Office of Disciplinary Counsel (ODC) had not met its burden of proving by clear and convincing evidence that Ms. Wagner violated R. 4.2(a). The Hearing Committee's findings and conclusions included the following.

Following a petition from Adult Protective Services in August 2015, the trial court appointed Mr. Richard Tappan, Esq., as guardian and conservator for M.D., a man who was diagnosed with diabetes, hypertension, high cholesterol, and delusional disorder. The trial court appointed Brett E. Cohen, Esq., as counsel for M.D. in September 2015. The petition stated that M.D.'s "cognitive functioning is impaired due to mental health issues and as a result, he is not able to handle his finances, living arrangements, or medical care." The petition also stated that

although M.D.'s brothers had assisted him in the past, M.D. was now suspicious of them and believed that they were trying to exploit him. M.D. believed his brothers wanted M.D.'s house.

Following a hearing on September 30, 2015, the court docket for the M.D. matter contained multiple entries about the hearing. The entry at the top of the list of entries for September 30, 2015, stated that Mr. Cohen had been dismissed as the attorney for M.D. A more detailed entry, which appeared below the first entry, described the proceedings and indicated that Mr. Cohen would remain in place as M.D.'s attorney until the continued status hearing date in April 2016. The court also issued a written order on September 30, 2015, that referred to Mr. Cohen as M.D.'s attorney.

Mr. Tappan moved M.D. to an assisted-living facility in or around March 2016. Mr. Cohen visited M.D. at the facility that month. Mr. Tappan subsequently began disposing of the contents of M.D.'s home without filing an itemized inventory or appraisal of M.D.'s belongings. When M.D.'s brothers learned of this they attempted unsuccessfully to call Mr. Tappan. In the interim, M.D.'s brothers asked Ms. Wagner, who was M.D.'s former next-door neighbor, to assist with contacting Mr. Tappan. Ms. Wagner was able to contact Mr. Tappan, but Mr. Tappan declined to share M.D.'s location or allow the brothers to speak with M.D. without first

receiving M.D.'s consent. While Ms. Wagner waited to hear back from Mr. Tappan, the brothers located M.D. and asked Ms. Wagner to visit M.D. to determine how he was doing and whether he knew the house was being cleared out.

The brothers retained Ms. Wagner on April 5, 2016, to file petitions for them to participate in the proceedings and to file a petition to remove Mr. Tappan as conservator and guardian. On April 8, 2016, without seeking or obtaining consent from Mr. Cohen, Ms. Wagner visited M.D. at the assisted-living facility and discussed with him the removal of Mr. Tappan as conservator and guardian. According to Ms. Wagner, she was unaware at that time that M.D. was represented by Mr. Cohen. Based on her past experience, Ms. Wagner understood that in guardianship proceedings, the appointment of counsel for a ward is typically terminated after the completion of the intervention hearing.

Ms. Wagner visited M.D. again on April 10, 2016, without seeking or obtaining consent from Mr. Cohen. M.D. informed Ms. Wagner that he wanted to remain in his home with assistance. After learning that Mr. Tappan had disposed of his personal belongings, M.D. indicated that he wanted the return of his property or he wanted damages. Both M.D. and his brothers now wanted Mr. Tappan's appointment as M.D.'s court-appointed fiduciary to be terminated.

At some point before the April 11, 2016, status hearing, Mr. Tappan learned that Ms. Wagner had visited M.D.  Mr. Tappan testified that he told Ms. Wagner to stop visiting M.D.

After speaking with M.D. on April 10, Ms. Wagner prepared a petition to terminate Mr. Tappan's fiduciary appointments.  On the day of the April 11, 2016, hearing, Ms. Wagner handed Mr. Tappan a copy of the petition, which did not include Mr. Cohen's name.  While Ms. Wagner was speaking with Mr. Tappan, Mr. Cohen introduced himself and said he was the court-appointed attorney for M.D.  Ms. Wagner "challenged whether M.D. had counsel" and asked Mr. Cohen to provide her with a copy of the order appointing him.  Mr. Cohen said that he would provide such an order, but he never did so.

During the hearing, Mr. Cohen identified himself as M.D.'s attorney and the trial court addressed Mr. Cohen as counsel for M.D.  Ms. Wagner at that point credited Mr. Cohen's representation that he was M.D.'s attorney, subject to verification.  Ms. Wagner also informed the court during the hearing that she was appearing for M.D.'s brothers and would be filing petitions to participate in the proceedings and to terminate Mr. Tappan's appointment.  Finally, the trial court scheduled a subsequent hearing for May 19, 2016, and asked Mr. Cohen if he would be available to attend.

After the hearing, Ms. Wagner went to the Clerk's Office and reviewed the docket for the case. Based on that review, Ms. Wagner concluded that Mr. Cohen had been dismissed as counsel for M.D. and that there was no order designating Mr. Cohen as M.D.'s counsel. When Ms. Wagner filed petitions for permission to participate in the probate proceedings, the certificates of service identified Mr. Cohen as a lawyer but did not identify Mr. Cohen as M.D.'s counsel. On April 13, 2016, Ms. Wagner served M.D., Mr. Tappan, and Mr. Cohen with the petition to terminate; the petition's certificate of service identified Mr. Cohen as "Attorney of Record for the Ward." A proposed order for the court's appointment of an attorney for M.D. was included with the petition.

On April 16, 2016, Ms. Wagner visited M.D. at the assisted-living facility for what she described as a social call. She identified herself to facility staff as M.D.'s neighbor, not the lawyer for M.D.'s brothers. During the visit, Ms. Wagner brought the petitions to participate and to terminate Mr. Tappan's status as guardian and read them to M.D. "line by line." Ms. Wagner also took notes during the meeting, recording details about M.D.'s medical history and experiences at the facility. She also created a partial inventory of personal property that was inside M.D.'s home, including M.D.'s estimations as to the value of some of the items. Ms. Wagner did not seek or obtain consent from Mr. Cohen for this visit.

Ms. Wagner again visited M.D. without seeking or obtaining Mr. Cohen's consent on May 4, 2016. Unprompted, M.D. informed Ms. Wagner of an upcoming hearing in the matter and expressed dissatisfaction with the removal of items from his home and concerns about returning to live in his house.

At some point following the April 11, 2016, hearing, Mr. Tappan called Mr. Cohen to inform him that Ms. Wagner had visited M.D. without Mr. Cohen's knowledge or consent. Mr. Cohen visited M.D. to confirm that Ms. Wagner had visited M.D. previously. Mr. Cohen then sent a letter to Ms. Wagner stating that he had learned that Ms. Wagner had met with M.D. at least once after the April 11, 2016, hearing, and that Ms. Wagner "never asked, and [Mr. Cohen] never granted, [Ms. Wagner] permission to speak to [M.D.]" Mr. Cohen also demanded that Ms. Wagner stop speaking with M.D. and that she provide Mr. Cohen with any work product from her visits with M.D. Ms. Wagner answered Mr. Cohen via email stating, "the record in the case clearly indicates that you are no longer [M.D.'s] attorney. It is not necessary that I solicit your consent to speak with [M.D.]"

In May 2016, Mr. Cohen filed a motion to strike Ms. Wagner's appearance, stating that Ms. Wagner should be removed because she was representing the interests of M.D.'s brothers, whose interests diverged from M.D.'s interests. Ms. Wagner responded to Mr. Cohen's motion to strike her appearance by arguing that

Mr. Cohen did not "currently have an order of appointment" and that there was no such court order on the docket, pointing to D.C. Super. Ct. Prob. R. 305(c), which states, "[t]he appearance of counsel for the subject of an intervention proceeding shall terminate upon the disposition of the petition for which counsel's appearance was entered, unless otherwise ordered by the Court." Ms. Wagner also filed an amendment to the petition for Mr. Tappan's termination that incorporated information that Ms. Wagner obtained from her interview with M.D. on April 16, 2016.

On June 1, 2016, the trial court held a hearing to discuss the motion to strike. When the trial court asked Ms. Wagner why she did not look into whether M.D. was represented, Ms. Wagner expressed her belief that counsel for M.D. would have been terminated at the end of the initial hearing. The trial court informed Ms. Wagner that her belief was incorrect and that Mr. Cohen's appointment as M.D.'s counsel had been extended for subsequent hearings. The trial court ultimately decided not to strike Ms. Wagner's appearance but informed her that there were "all sorts of ethical questions" about her behavior and that the trial court thought "a referral to [Disciplinary] Counsel [was] appropriate." The trial court also declined to remove Mr. Tappan.

Mr. Cohen understood that he served as M.D.'s counsel continuously from the September 30, 2015, hearing through the termination of his appointment on January 24, 2017.

The Hearing Committee concluded that Ms. Wagner was representing M.D.'s brothers during the relevant period and that Ms. Wagner communicated with M.D. about the subject of the representation. The Hearing Committee concluded, however, that ODC did not prove by clear and convincing evidence that Ms. Wagner knew that M.D. was represented by another lawyer. Specifically, the Hearing Committee noted (1) Ms. Wagner's prior understanding of the law governing court appointment of attorneys in probate proceedings; (2) the "internally inconsistent" September 30, 2015, docket entries; (3) Mr. Cohen's failure to produce an order of appointment after Ms. Wagner requested one, despite saying he would; and (4) the trial court's failure to "explicitly determine that [Ms. Wagner] had acted unreasonably."

The Hearing Committee accordingly recommended that the matter be dismissed.

**B. The Board's Order of Remand**

The Board disagreed with the Hearing Committee, finding that the record evidence established by clear and convincing evidence that Ms. Wagner knowingly communicated with a represented party in violation of R. 4.2(a).

The Board explained that R. 4.2(a) "is primarily focused on protecting represented persons unschooled in the law from direct communications from counsel for an adverse person." D.C. R. Pro. Conduct 4.2, cmt. [5]. Otherwise relying on the Hearing Committee's findings of fact, the Board determined that Ms. Wagner had violated R. 4.2(a) when she repeatedly met with M.D., despite knowing that he was unschooled in the law, felt unsafe around her clients (his brothers), and was represented by Mr. Cohen.

The Board concluded that the evidence established that Mr. Cohen served as M.D.'s court-appointed counsel at all relevant times in this case and that Ms. Wagner "was well aware of that fact." The court, the parties, and Mr. Cohen all regarded Mr. Cohen as M.D.'s attorney; even Ms. Wagner "recognized as much when she included Mr. Cohen's name on the certificates of service" attached to her petitions.

The Board was unpersuaded by Ms. Wagner's argument that her clients' interests were not adverse to M.D.'s interests. The Board explained that, in this

matter, M.D. was unfamiliar with the law and had court-appointed counsel and a guardian because of his diminished capacity. M.D. had already expressed repeated concerns about Ms. Wagner's clients—his brothers—attempting to exploit and harm him. The Board pointed to Ms. Wagner's decision to announce herself as M.D.'s neighbor, rather than attorney for M.D.'s brothers, at the assisted-living facility as evidence of Ms. Wagner's awareness of the adversity between M.D. and her clients. Finally, the Board explained that adversity between parties is not the sole concern of R. 4.2; another key aim is to "protect unsuspecting lay persons from the inadvertent disclosure of privileged information." By communicating with M.D. without Mr. Cohen present, Ms. Wagner put any privileged communications at risk.

The Board remanded the question of sanction to the Hearing Committee to give the parties an opportunity to present evidence of mitigating or aggravating circumstances.

## C. The Hearing Committee's Supplemental Report and Recommendation

During the proceedings on remand, Ms. Wagner contended that ODC had engaged in selective prosecution and discriminatory practices, but the Hearing Committee found that Ms. Wagner offered only speculation in support of these claims. Ms. Wagner also contended that her conduct did not violate R. 4.2(a), but

the Hearing Committee explained that the Board had already resolved that issue. Ms. Wagner also argued that the matter should be dismissed due to delay in prosecution, but the Hearing Committee declined to do so, explaining that Ms. Wagner had failed to identify any prejudice that resulted from any delay in prosecution.

On the remanded issue of sanction, the Hearing Committee concluded that Ms. Wagner's conduct (1) was serious and put M.D.'s privileged communications with his counsel at risk; (2) was not prejudicial to her clients, M.D.'s brothers; (3) was not dishonest; and (4) involved violations of only one rule, R. 4.2(a). As an additional aggravating factor, the Hearing Committee found that Ms. Wagner failed to acknowledge her misconduct, justified her misconduct by claiming that "she had no other choice," and "flatly denied" feeling remorse. The Hearing Committee further noted that Ms. Wagner's prior disciplinary history included two informal admonitions, one from eighteen years before this matter and one from seven years prior. The Hearing Committee concluded that Ms. Wagner's disciplinary history weighed in aggravation of sanction, although the Hearing Committee acknowledged that the older admonition should be given limited weight.

On balance, the Hearing Committee concluded that Ms. Wagner should be publicly censured by the court. The Hearing Committee explained that although

R. 4.2(a) violations generally result in informal admonitions, more severe sanctions have been imposed in matters where there were aggravating factors present. The Hearing Committee concluded that there were "significantly aggravating factors" in this case and accordingly determined that a public censure would serve to protect the integrity of the Bar and to deter future misconduct.

### D. The Board's Report and Recommendation on Sanction

The Board agreed with the Hearing Committee's recommended sanction based on the Hearing Committee's thorough consideration of the factors articulated in this court's case law.

## II. Analysis

### A. Standard of Review

In considering a recommendation of the Board, this court will defer to the Board's findings of fact if those findings are supported by substantial evidence. *In re Haar*, 270 A.3d 286, 294 (D.C. 2022). "The burden of proving disciplinary charges rests with [Disciplinary] Counsel, and the Board's factual findings must be supported by clear and convincing evidence." *In re Johnson*, 275 A.3d 268, 280 (D.C. 2022) (per curiam) (internal quotation marks omitted). The Board must defer to the findings of fact made by a Hearing Committee, unless the Hearing

Committee's findings are not supported by substantial evidence. *Id.* at 275. We owe no deference to the determination of legal issues by either the Board or the Hearing Committee. *In re Krame*, 284 A.3d 745, 752-55 (D.C. 2022).

We note at the outset a potential issue that neither party has addressed. The Hearing Committee found that ODC had failed to prove by clear and convincing evidence that Ms. Wagner knew that Mr. Cohen represented M.D. At least arguably, that factual determination should bind the Board and this court unless the Board or the court could determine that the Hearing Committee's determination was "unsupported by substantial evidence," *Johnson*, 275 A.3d at 276, or, alternatively, was "clearly erroneous," *In re Lea*, 969 A.2d 881, 894 (D.C. 2009). The Board's report and recommendation in this case does not explicitly state such a conclusion, instead framing the issue as whether there was clear and convincing evidence that Ms. Wagner knew that M.D. was represented.

On the other hand, we have said that "a respondent's state of mind might be an ultimate fact that is reviewed de novo, [although] a Hearing Committee's credibility findings can still constrain the determination of ultimate fact." *Krame*, 284 A.3d at 754. We need not delve further into this issue, however, because the parties have not raised the issue. Rather, both parties have framed the issue as

whether the Board's finding that Ms. Wagner knew M.D. was represented was supported by clear and convincing evidence. We analyze the issue accordingly.

In determining what sanction to impose for violations of the Rules of Professional Conduct, this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "[A] sanction recommendation from the Board comes to us with a strong presumption in favor of its imposition." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam) (internal quotation marks omitted). "In general, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *Id.* (internal quotation marks omitted).

## B. Procedural Objections

Ms. Wagner raises numerous procedural objections, but we do not view those objections as providing a basis upon which to reject the Board's conclusion and recommendation. Most of Ms. Wagner's procedural objections are raised in an extremely conclusory form. Specifically, Ms. Wagner argues that the specification

of charges in this case was insufficient; ODC's investigation was not "full, fair and impartial"; ODC should be required to document its charging decisions to ensure that "impartial and consistent criteria" are applied; "systemic practices and procedures" in the disciplinary system deny attorneys impartial and fair hearings; Ms. Wagner received inadequate notice of a complaint against her and had no opportunity to respond to that complaint; and ODC engaged in discrimination and selective prosecution in this matter. We decline to consider these inadequately developed arguments. *See, e.g.*, *Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) (explaining that this court will decline to address arguments that are inadequately developed in briefing because "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work") (brackets and internal quotation marks omitted).

We note that Ms. Wagner purports to incorporate by reference a number of arguments she made before the Hearing Committee and the Board. Parties, however, must include in their briefs "an argument containing . . . the [party's] contentions and the reasons for them, with citations to the authorities and parts of the record on which the [party] relies." D.C. App. R. 28(a)(10)(A) (stating requirement as to appellants' briefs); D.C. App. R. 28(b) (requirement also applies to appellees' briefs). We typically decline to consider arguments that are not contained in a

party's brief but instead are presented elsewhere and merely incorporated. *See, e.g.*, *Brown v. United States*, 675 A.2d 953, 955 (D.C. 1996) (declining to consider arguments appellant did not present in brief on appeal but instead only purported to incorporate). We see no reason to depart from that practice in the present case.

Ms. Wagner does somewhat more fully develop two procedural objections. First, she argues that ODC unreasonably delayed prosecution of this disciplinary matter. "[A]n undue delay in prosecution is not in itself a proper ground for dismissal of charges of attorney misconduct," because "the primary purpose of disciplinary proceedings is to protect the public . . . . [and] it would not be in the public interest to dismiss the disciplinary proceedings for no reason other than the Bar's failure to prosecute [the charged attorney] with the proper dispatch." *In re Williams*, 513 A.2d 793, 796-97 (D.C. 1986) (per curiam) (internal quotation marks omitted). Undue delay can result in a due-process violation, however, "if the respondent demonstrates actual prejudice—that is, that the delay in prosecution impaired [the respondent's] defense." *In re Blackwell*, 299 A.3d 561, 569 (D.C. 2023) (internal quotation marks omitted). Ms. Wagner makes no showing that she suffered any prejudice as a result of the delay. Accordingly, we see no grounds for relief on this point.

Second, Ms. Wagner argues that the Hearing Committee erroneously refused to consider certain exhibits that Ms. Wagner sought to introduce in connection with the remand to determine the appropriate sanction. The transcript on remand reveals that the Hearing Committee discussed the relevance and admissibility of each proposed exhibit Ms. Wagner sought to proffer. Ms. Wagner claimed the exhibits were relevant to her "good faith" beliefs and "state of mind" as the M.D. matter unfolded. ODC argued that the exhibits were not clearly connected to the question of what Ms. Wagner knew at the time of her misconduct and were therefore not relevant. The Hearing Committee excluded Ms. Wagner's exhibits because the Hearing Committee was "not satisfied that Ms. Wagner showed any of [the exhibits] were relevant to show mitigation of the violation in this case concerning her conduct" during the period at issue. We see no basis to grant relief to Ms. Wagner on this point. The only exhibit Ms. Wagner focuses on specifically is RX 42, which Ms. Wagner argues shows that Mr. Cohen was not adequately representing M.D.'s interests and that Ms. Wagner intervened out of a desire to help M.D. In recommending a sanction, however, both the Hearing Committee and the Board indicated that they understood that Ms. Wagner was acting in good faith to help M.D. The excluded exhibit thus would not have affected the sanction recommendations of the Hearing Committee and the Board, and the excluded exhibit also does not affect our view as to the proper sanction in this case.

## C.  R. 4.2(a) Violation

Essentially for the reasons stated by the Board, we agree that there was clear and convincing evidence that Mr. Cohen was representing M.D. and that Ms. Wagner knew that.  It is true that there was at least some evidence to support Ms. Wagner's claim that she was not aware, particularly the ambiguous docket entries and Mr. Cohen's failure to provide a written order of appointment.  We agree with the Board, however, that there was much stronger evidence to support the conclusion that Ms. Wagner knew that Mr. Cohen was representing M.D., including Ms. Wagner's presence at a hearing where the participants treated Mr. Cohen as M.D.'s lawyer and Ms. Wagner's acknowledgement of that status in a court filing.

Although Ms. Wagner suggests that her conduct was justified by a concern about the quality of Mr. Cohen's representation of M.D. and prompted by a desire to intervene to help M.D., those considerations do not justify or excuse Ms. Wagner's violation of the Rules of Professional Conduct.  Ms. Wagner had other options to attempt to protect M.D.'s interests, such as filing motions on behalf of her clients, M.D.'s brothers, to bring her concerns to the attention of the trial court.

## D.  Sanction

Ms. Wagner does not appear to separately dispute the recommended sanction of public censure.  In such circumstances, the recommended sanction "comes to us with a strong presumption in favor of its imposition."  *Baber*, 106 A.3d at 1076.  Essentially for the reasons stated by the Hearing Committee and the Board, we agree that a public censure is an appropriate sanction in this matter.

For the foregoing reasons, we hold that Ms. Wagner violated R. 4.2(a).  Ms. Wagner is hereby publicly censured.

*So ordered.*